Leahigh v. White.

------------

## WILLIAM P. LEAHIGH, APPELLANT, v. E. A. WHITE, RESPONDENT.

DEED ABSOLUTE ON ITS FACE, WHEN A MORTGAGE—GRANTEE OF GRANTEE. Where Leahigh contracted with Murphy to purchase a lot from him for $400; and Bliss having advanced $300 of the money as a loan to Leahigh at Leahigh's request took a deed of the property in his own name as a security for such loan; and afterwards Bliss sold the lot to White, who, however, had notice of the facts and of Leahigh's claim: *Held*, that under the circumstances White held only as mortgagee and that Leahigh had the right to redeem.

DEED DIRECT TO LOANER OF PURCHASE-MONEY AS SECURITY. If a person loans money to another on the security of a lot to be purchased and takes the deed in his own name to hold as security for the loan, such transaction constitutes a mortgage between them, the same as if the borrower had taken the deed and then made a mortgage to the loaner.

APPEAL from the District Court of the Seventh Judicial District, Lincoln County.

The main facts are stated in the opinion. The plaintiff prayed for an accounting as to what was owing by him and as to rents received by defendant; that defendant might be decreed to convey to him upon the payment of any amount that might be found due by him; that if nothing was due, such decree might be absolute; that he might have judgment for any balance found in his favor; and for general relief.

The cause in the court below was submitted to a jury on special issues. Among other findings, one of which is given in the opinion, were the following:

*In answer to questions propounded by Plaintiff.*

4. Did the defendant White at the time he took the deed for the premises in controversy, or prior thereto, have notice of the transaction between the plaintiff Leahigh and H. Bliss, and of plaintiff Leahigh's equitable interest in the premises? *Answer.* Nine jurors find that White did have notice of the transaction between plaintiff Leahigh and H. Bliss. Ten jurors find that defendant White did not have notice of Leahigh's equitable interest in the premises.

5. Was plaintiff Leahigh in the actual possession of the premises in controversy from on or about February 23d, A. D. 1870, up to May, A. D. 1870; and did he occupy the same until his cabin was rendered uninhabitable by the elements? And was his possession open, exclusive, and notorious during that time? *Ans.* Twelve jurors answer, Yes.

6. Did plaintiff Leahigh in June or July, A. D. 1870, tender to the defendant White the sum of three hundred and twenty-five dollars, gold coin, and demand a reconveyance of the premises in controversy? *Ans.* Twelve jurors find he did tender the money to defendant White. Nine jurors find that he did not demand a reconveyance.

9. Were the circumstances connecting Leahigh with the premises in controversy such as to have put a man of ordinary prudence upon inquiry as to the title or claim of Leahigh to the premises? *Ans.* Nine jurors answer, Yes.

12. Did defendant White, at the time he purchased the lot in controversy, rely or act upon any declaration, assertion

or silence of plaintiff Leahigh, made or omitted to be made by plaintiff Leahigh at the time defendant was on the lot, at about the time of his purchase, in company with B. W. Field and plaintiff Leahigh? *Ans.* Nine jurors answer, No.

*Questions by Defendant.* 3. Did Leahigh know the fact that White was about to purchase the property; and if he did so know, did he inform the defendant White of any claims that he had to the same, at the time they were on the lot, or at any other time prior to the completion of the purchase? *Ans.* Twelve jurors answer, Yes; he did know of the intended purchase by White the defendant, but did not inform White, the defendant, of any claim he had at the time they were upon the lot. Nine of the jurors find that defendant White was informed of the claims of plaintiff Leahigh, prior to the completion of the purchase. But do not find that Leahigh gave such information.

6. Did plaintiff by his conduct and language on the lot, prior to defendant's completion of the purchase, lead the defendant to believe that he was purchasing a good title, and that he, plaintiff, had no claim upon the same? *Ans.* Nine jurors answer, Yes.

Upon the return and filing of the special findings, defendant moved for judgment thereon; and in response to the motion the court below rendered judgment in favor of defendant dismissing the action and for costs. Plaintiff appealed from the judgment.

*H. I. Thornton*, for Appellant, discussed the findings; claimed that under them the plaintiff was entitled to judgment, and cited *Willard* v. *Hathaway*, 27 Cal. 119.

*D. W. Perley*, for Respondent.

I. Plaintiff did no act to redeem prior to suit brought. He did not tender the full amount necessary to effect a redemption. His tender was in June or July, and did not include interest on the $325 from April 25th; nor was any

reconveyance demanded; nor was there any offer to bring the money into court.

II.   Bliss never had any right of foreclosure, and no personal debt or obligation of any kind existed as between plaintiff and defendant.   Equity could never do such injustice as to construe this a mortgage which plaintiff could redeem but not a mortgage which defendant or his vendor could foreclose.   See *Koch* v. *Briggs,* 14 Cal. 262; *Flagg* v. *Mann,* 14 Pick. 467; *Glover* v. *Payne,* 19 Wend. 518; 2 Barb. 29; 3 Leading Cases in Eq. 636; 4 Denio, 493.

It is believed no case can be found where a deed absolute has been allowed to be converted into a mortgage by parol evidence, except as between the original parties to the transaction.


By the Court, LEWIS, C. J.:

This action is brought by the appellant to obtain a decree declaring a certain absolute deed executed by one Bliss to the defendant to be a mortgage and enforcing the plaintiff's right of redemption.

The facts giving rise to this action appear to be these: One J. M. Murphy being the owner of a lot in the town of Pioche on or about the 25th day of February, A. D. 1870, made a parol agreement with the plaintiff Leahigh to sell it to him for four hundred dollars, upon which contract the plaintiff paid one hundred dollars and agreed to pay the balance at the expiration of thirty days; upon the payment of the whole sum Murphy was to execute to him a deed of conveyance.   Leahigh under this agreement and by the permission of Murphy entered into possession of the lot.   On the 25th of March when the remaining three hundred dollars became due, the plaintiff, not having the money, applied to one Bliss for a loan of the amount, agreeing to allow him to take a deed absolute from Murphy as security for the loan so made.   These are the facts as they appear from the plaintiff's complaint; but the defendant alleges that Bliss refused to loan the money to plaintiff, but agreed to pur-

chase the lot at the amount due Murphy, and to give plaintiff the privilege of buying it back within a certain time at a stipulated price.   The money was paid to Murphy and a deed of conveyance executed to Bliss.   On the 25th day of May, A. D. 1870, while in possession of the property and claiming it under the deed, Bliss sold and conveyed it for a valuable consideration to the defendant White, who claims that he is a purchaser in good faith and for a valuable consideration without notice and therefore should be protected from the claim now set up by the plaintiff.

No motion for new trial was made, and the only question raised in this court is whether the facts found by the jury warrant the judgment rendered by the court dismissing the bill.

We think judgment should have been rendered in accordance with the prayer of the bill and therefore that the court erred in dismissing it.   The findings of fact by which we must be governed in determining this case are all in favor of the plaintiff's claim.   It is found that Leahigh entered into the contract with Murphy for the purchase of the lot in question.   That the three hundred dollars paid to Murphy on or about the 25th of March, A. D. 1870, was a loan by Bliss to the plaintiff Leahigh.   That the deed made by Murphy to Bliss was executed at the request and under the direction of the plaintiff Leahigh, and was given and intended as a security for the loan of the three hundred dollars made by Bliss to the plaintiff.   That the defendant White had notice of this transaction between Bliss and Leahigh, and of the latter's claim to the lot, before he received the conveyance from Bliss.   There is one finding which upon first impression would appear to contradict this fact of notice; but it can, we think, be very easily reconciled with the finding (which is several times repeated) that White had the notice before his purchase from Bliss was consummated.   The finding which appears to be contradictory of such fact reads thus:   "Had defendant any notice of Leahigh's claim or of the agreement between him and Bliss prior to or at the time of the purchase of the lot?"   The jurors answer, "No."

As before stated, it is several times repeated in previous findings that before the *consummation* of the purchase he had notice of Leahigh's claim. Now it may be that the jurors understood by the word purchase in the finding above quoted the agreement to purchase; or it may be that they had reference to transactions between Leahigh and Bliss; at least this finding is not so explicit upon the question of notice as to authorize us in saying that it contradicts the others which are very explicit. It will be seen, this finding does not designate the purchase referred to; whether it was the purchase by Bliss from Murphy, (if it may be so called) or the purchase by White from Bliss, is not stated. With such want of explicitness we are not prepared to disregard the very distinct findings that White had notice of Leahigh's claim before the completion of his purchase from Bliss.

Why, then, may not the plaintiff enforce his claim? That he could enforce it against Bliss can scarcely admit of question, for the deed taken by him is found by the jury to be intended as a mortgage, and that is always considered of great importance in determining the question whether an absolute deed is to be held to be a mortgage. It is found that the three hundred dollars advanced by Bliss was a loan to Leahigh, and was not paid as purchase-money. Thus Bliss having a claim against the appellant for the three hundred dollars so loaned and may maintain his action to recover it, and this is proof conclusive that the deed, although absolute, was intended as a mortgage; and thus is presented one of the commonest cases of interference by courts of equity. To prevent fraud and injustice the deed is decreed to be a mortgage as the parties intended it and the privilege of redemption secured. If the action could be maintained against Bliss why not against one who claims from Bliss with full knowledge of the plaintiff's rights? There is no doubt but it can. White stands in the exact position of Bliss, with no greater or better right.

That the deed was executed by and the title passed directly from Murphy to Bliss, instead of passing from Leahigh, can make no difference. Upon the payment of the

three hundred dollars Leahigh was entitled to the legal title from Murphy, but instead of receiving it he directed it to be conveyed to Bliss as security for the loan. So far as the equitable rights of the parties are concerned they stand in precisely the same position as if Leahigh had first taken a deed from Murphy and then immediately conveyed to Bliss. Bliss received the legal title to which Leahigh was entitled by his direction, simply as a security for a loan. Where the difference, so far as Leahigh's rights are concerned, between such a transaction and the receiving by him of the legal title from Murphy and the immediate conveyance of it to Bliss for the purpose of security? There is none practically or equitably.

The record does not show the amount due from plaintiff to defendant to entitle him to redemption: we can not say therefore that the tender was not sufficient.

Judgment reversed, and the court below directed to render judgment in accordance with the prayer of the bill.