480

EZRA H. STEWART *et al.*

*v.*

FRANK FELLOWS *et al.*

*Filed at Ottawa April 3, 1889.*

1. TRUSTS AND TRUSTEES—*protecting trust estate—equitable lien in favor of trustee.* The fact that a person becomes the trustee of another, of property bought by taking an assignment of the contract of purchase, to hold the same in trust, will not preclude him from afterward advancing money, at the request of the *cestui que trust,* to prevent a declaration of forfeiture of the contract of purchase ; and if the trustee makes such advance with, or even without, the request of the *cestui que trust,* and thereby prevents a loss of the property, he may take the title, with the consent of the *cestui que trust,* and hold it as security for the money so advanced by him, and have an equitable lien on the property therefor.

2. While it may be that a trustee holding the title to a lot in trust for another would be prevented, from his position as such, from demanding that other claims held by him should be tacked on and secured upon the property to the injury of the *cestui que trust,* that would in no wise affect his equitable lien for money necessarily advanced by him to protect and preserve the estate of his *cestui que trust.*

3. RESULTING TRUST—*in favor of a wife—of money loaned to the husband.* Where a wife, after the passage of the Married Woman's act of 1861, loans her money to her husband, she will become simply his creditor, and if the husband invests the money so borrowed in the purchase of land in his own name, no resulting trust will arise in favor of the wife.

4. MORTGAGE—*a transaction treated as such.* Where a purchaser of a lot of ground assigns his contract of purchase to another in trust, and the trustee advances the purchase money, when due, at the request of the *cestui que trust,* to save a forfeiture, and the vendor conveys the title to such trustee, and transfers to him the notes given for the price, by consent of the *cestui que trust,* as a security for the repayment of the sum so advanced, the transaction will, in equity, be treated as a mortgage, and it will not concern the *cestui que trust* to whom the money is decreed to be paid,—whether to the trustee or his devisee.

5. WILL—*devise of land held in security for a debt passes a right to collect the debt.* If a party holding the legal title to land as a security for the payment of moneys advanced for the benefit of the real owner, devises the land, the devise will carry whatever right the devisor had therein, to his devisee.

6. Witness—*competency—party to suit, as against one suing as the representative of a deceased person.* Where A transferred his bond for a deed to B, without consideration, thereby making the latter his trustee, and procured B to make payment of the purchase money, and had the vendor convey the property to B, who died, having devised all his estate to C, and the executor of C filed a bill against A and his wife to foreclose the deed as a mortgage, it was *held,* that A was not a competent witness in his own behalf as to any transaction between himself and B, or to testify in his own interest when called by his co-defendant, his wife.

7. Same—*credibility—declarations and admissions of one of two parties.* A bought a lot and procured B, his trustee, to advance $500, the purchase money, and take a deed in his own name. On a creditor's bill against A, he set up the fact that B had advanced the money at his request, and took the title as a security for its repayment. B died, having devised all his property to C, who also died. On bill by the personal representatives of B and C to foreclose A's equity of redemption, filed against A and his wife, the latter set up in defense that the money paid by B was advanced by him to A, and was the money of A's wife, and A so testified in the case : *Held,* that A's answer to the creditor's bill was competent evidence, as tending to affect the credit to be given to his testimony, his attention having been called to the allegations in the cross-bill.

8. Husband and wife—*husband's right to his wife's money.* Prior to the Married Woman's act of 1861, the husband had the right to reduce his wife's money and personal property into possession, and upon doing so, he would become the absolute owner of the same. A loan of money by a wife to her husband before that act took effect, made him the owner thereof.

9. Delivery of deed—*a transaction considered.* The holder of the legal title to a lot made a deed to another party, but instead of delivering the same, placed it in escrow in a bank, with this direction over his signature on the envelope containing the deed : "To be delivered in case of my death." Subsequently the grantor revoked the power to deliver the deed, but allowed it to remain with the bank. After the grantor's death the grantee obtained the deed by replevin, and had the same recorded. No intervening rights were acquired : *Held,* that the case must in all respects be treated as if the deed had remained undelivered.

10. Evidence—*will of deceased party to show transfer of property and claim of ownership.* A party taking the title to a lot as a security for the purchase money advanced, by his will bequeathed and devised the property to F., subject to the condition that in case one S. (the debtor) should, within one year, pay to F. "such principal and interest as shall, at the time of such payment, be due me on an account now open be-

31—128 Ill.

tween us, the principal sum and interest thereon, then I authorize and empower said F. to convey said realty to said S., and in said case I give and bequeath to said F. such sum of money so paid," etc. The testator, in his lifetime, made a deed of the property to the wife of S., and left it with his banker, to be delivered in case of his death. On bill to foreclose S.'s equity of redemption, the court admitted this will in evidence, over the defendant's objection : *Held,* that the will was competent evidence to show complainant's title by the devise, and that it was also competent evidence as tending to sustain the contention that the deed had not been delivered to the wife of S., and was not intended to be delivered except on payment of the open account.

11. SAME—*proof that money paid was that of the trustee paying the same, and not that of the cestui que trust.* A, the purchaser of a lot under a bond for a deed or contract of purchase, assigned his contract to B, who paid nothing therefor, and who gave to A a writing showing he held the property as trustee, for A's use and benefit. When the purchase money fell due, B, the trustee, paid the same to the original vendor, and took a deed to himself, by the consent of A, and also took up A's note given for the price, and retained the same until his death : *Held,* that these facts afforded *prima facie* evidence that the money paid by the trustee was his own, and not that of A, the *cestui que trust.*

12. INTEREST—*on money advanced by debtor's request.* Where A, at the request of B, paid off the note of the latter given for the price of a lot, and, by consent, took the deed from the vendor as security, and also took up B's note, unindorsed, bearing ten per cent interest, and the parties treated the money so paid as an advance on open account, it is error for the court, in finding the sum due from B, to allow any greater rate of interest than six per cent. In such case, B's liability is on an account, and not on the note so paid.

APPEAL from the Appellate Court for the Second District ;—heard in that court on appeal from the Circuit Court of Will county; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. HALEY & O'DONNELL, for the appellants.

Messrs. OLIN & PHELPS, for the appellees.

Mr. JUSTICE SHOPE delivered the opinion of the Court :

The bill in this case seeks to have the deed made by Richards and wife to George M. Leonard, at the instance and request of Ezra H. Stewart, declared an equitable mortgage to Leonard, to secure the payment of certain indebtedness of

Stewart, and to foreclose the same. The circuit court found that said deed was security for the amount due on the $500 note of Stewart to Richards, but refused to hold that it was security for the indebtedness of Stewart on two other notes given by Stewart to Fellows, and endorsed to Leonard. The appellees, complainants below, make no complaint of this decree.

It is conceded that on October 12, 1870, Stewart purchased of David Richards the lot in controversy, for the sum of $500, and gave his note therefor to Richards, payable four years after date, and bearing interest at ten per cent per annum, payable annually, and that Richards gave Stewart a written obligation for a warranty deed, to be made on payment of said note according to its legal effect, reserving the right to declare forfeiture for non-payment, and making the time of performance by Stewart, of the essence of the contract. Stewart went into possession of the property, erected a house and made other improvements thereon. February 7, 1873, Stewart assigned this contract of purchase to Leonard, who gave back a written declaration that the assignment was without consideration, and that he held the contract in trust for Stewart, and subject to his order and control; and also gave Stewart his two promissory notes, for $500 each, without any other consideration than to create an apparent consideration for such assignment, and possibly to afford security for the execution of the trust. On the 13th day of October, 1874, (the day after the maturity of Stewart's note to Richards,) Leonard, under some arrangement with Stewart, paid Richards $550,—being the amount then due on said note,—and Richards, by the direction of Stewart, conveyed the lot to Leonard, and also delivered to him, without endorsement, Stewart's note given for the purchase money of the lot. This deed and note, and assignment of the contract, together with the other two notes of Stewart given to Fellows, came into possession of the executors of the last will of E. C. Fellows, after the death of both Fellows and Leonard.

The fact that Leonard became the trustee of Stewart in re-
spect of this property, would not preclude him from afterwards
advancing money at the request of Stewart, to prevent a dec-
laration of forfeiture by Richards; and if Leonard made such
advances with, or even without, the request of his *cestui que
trust*, and thereby prevented loss of the property, we see no
reason why he might not take the title, with the consent of
Stewart, and hold it as security for the money advanced, or
why a court of equity should not hold that he would have an
equitable lien on the property therefor. It may be that his
position as trustee would have prevented him from demand-
ing that other claims held by him should be tacked on, and
secured upon the property, to the injury of the *cestui que trust;*
but that would in nowise affect the equitable lien for money
necessarily advanced by him to protect and preserve the es-
tate of his *cestui que trust*. However, that question does not
here arise, for the reason that there was included in the decree
only the money advanced, at Stewart's request, to prevent a
forfeiture under the Richards contract.

The question of most difficulty is one of fact,—that is, to
whom did the money belong with which the payment to Rich-
ards was made. The complainants insist that it belonged to
E. C. Fellows, who advanced it to Leonard for the purpose
for which it was used, while the defendants contend that it
belonged to Mrs. Stewart, and was delivered by Stewart to
Leonard the day before he paid it to Richards. If the con-
tention of the defendants prevails, a reversal of the decree
must follow. If the other contention prevails, the inquiry
whether the money belonged to Leonard or to E. C. Fellows
is not material. If the money was not furnished by either of
the defendants, but was advanced by Leonard at the request
of Stewart, and the deed was made by Richards to him, by
the consent of Stewart, as a security for its repayment, the
transaction will, in equity, be treated as a mortgage, and in
that event it will not concern the defendants to whom the

money is decreed,—whether in favor of the estate of Leonard, or that of Fellows.

Upon the theory that the deed is held as a mortgage, we think the decree properly found that the money should be paid to the estate of Fellows. Leonard, by his last will, duly probated, devised and bequeathed the property in controversy to said Fellows, subject to the condition "that in case one Ezra H. Stewart, dentist, now of Joliet, Illinois, shall, within one year from the probate of this will, pay to said Fellows such sum, principal and interest, as shall, at the time of such payment, be due me on an account now open between us, the principal sum and interest thereon, then I authorize and empower said Fellows to convey said realty to said Stewart; and in such case, I give and bequeath to said Fellows such sum of money so paid, absolutely and without reserve." If the property in the hands of Leonard was a mere security for the payment of the money advanced by Leonard for Stewart's benefit, the devise of the land would carry whatever right Leonard had therein, to the devisee.

A point is sought to be made upon the language of the will quoted. It is said that the condition is, that if Stewart shall pay the amount due Leonard on an account now open between them, etc.; and that it is evident no such account existed, and that the executor of the estate of Fellows can have no standing because there was not an account open between Leonard and Stewart. However, if Leonard advanced the money to Richards for Stewart, it is manifest that it was upon open account. No note was taken therefor, nor was the Richards note assigned. Nor is the statement inconsistent with the contention that Fellows in fact furnished the money with which to pay Richards. It is not shown that Stewart had any knowledge of the source from whence Leonard procured the money,—that is, whether he in fact furnished it himself, or whether he got it of Fellows. In the event that Leonard really got it of Fellows, if Leonard advanced the money to Stewart

it would be an open account between Stewart and Leonard. The credit was given, as it would seem, by Leonard, and not by Fellows. As we have seen, there was no assignment of the note by Richards to Leonard, and undoubtedly the account referred to in the will of Leonard was for the money advanced by Leonard to take up said note. It will be unnecessary, therefore, to examine the evidence to ascertain whether Leonard used Fellows' money, or his own, in making such payment.

The fact that Leonard paid the money to Richards, and took a deed to himself by the consent of Stewart, taking up and retaining Stewart's note to Richards, as against the defendants, affords *prima facie* evidence that the money was his. Richards testifies that Leonard paid him the money, and that he deeded the property to Leonard at Stewart's request. If Stewart furnished the money, it would seem strange that Leonard should, by his consent, have taken up the note from Richards and retained it to the time of his death. Frank Fellows testifies, that he and E. C. Fellows came to Joliet on January 13, 1876, which was long after Leonard's death, and that he and Stewart figured the principal and interest then due ; that Stewart then wanted his father, E. C. Fellows, to make a deed of the lot to Stewart's wife ; that his father replied, he did not care to whom he made the deed if he got his money. He thinks they figured the interest on three notes. He says: "I think two were payable to father, and another was transferred from Richards to father or George (Leonard). * * * I made a memorandum of our figuring at the time I got the $50 from Stewart. * * * The amount was $1231.16." Perry J. Hobbs testified, that Stewart told him, in 1876, that he wanted to borrow $1200 to pay a claim that Fellows had against him ; that Stewart explained, that a deed from Mr. Leonard to Mrs. Stewart was in the National Bank, in escrow, and that he wanted this money for the purpose of obtaining that deed. Moreover, Stewart, in his sworn schedule in bankruptcy, shows that he then owed the estate of George M. Leonard, or the estate of

E. C. Fellows, $1400, for money loaned. It is not shown that there were any other transactions out of which such indebtedness could have arisen, other than the three notes before referred to, which, as we have seen, including the money paid Richards, amounted to only $1231.16 in 1876. Mrs. F. D. Fellows testified, that after the death of Leonard, and of her husband, E. C. Fellows, she had a conversation with Stewart at the Methodist parsonage in Lockport. She says: "I asked him, 'What did George (Leonard) put that deed he made to you in the bank for?' He said, 'So that when I pay Mr. Fellows I can keep the property.'"

Again, a bill was filed by one Goodspeed to subject this property to the payment of a judgment against Stewart in his favor. Stewart, on January 17, 1876, filed a cross-bill in said proceeding, which was signed and sworn to by him. In this cross-bill he alleges, that on October 12, 1870, he purchased of Richards the real estate in question, for $500; that he gave Richards his promissory note for the purchase money, payable four years after date, with ten per cent interest; that Richards gave him a contract for a deed, containing a clause authorizing a declaration of forfeiture in default of prompt payment; that he (Stewart) was financially embarrassed and unable to meet the payment, and, fearing a forfeiture, arranged with Leonard to pay Richards the amount called for in the note and contract, and assigned to Leonard the said contract for a deed, by way of security; that on October 12, 1874, Leonard did pay the sum of $500 to said Richards, he giving Leonard $50 to pay the interest on said note for the year last preceding, upon payment of which note, Richards made a deed of the premises to Leonard, and that, by agreement, Leonard was to convey the same to him (Stewart) upon his refunding the money so advanced by Leonard to pay off Richards. The introduction of this cross-bill as evidence was objected to, on the ground that Stewart was not the agent of his wife in respect thereof, and his declarations, therefore, were not binding upon her. It

certainly was competent evidence against Stewart, both as an admission against his interest, and also as tending to impeach his testimony given in this cause. Outside of his testimony, there is no direct evidence in the record showing his wife to be the owner of this property, or that she furnished any money with which to pay for the same. There is no pretense that she ever contracted for it, or that Stewart actually conveyed his equities in the property to her. If Stewart was a competent witness, his attention having been called to the allegations of his cross-bill, before referred to, it was certainly competent, as tending to affect the credit to be given to his testimony.

Stewart testified, in his own behalf, that he gave Leonard $550 of money belonging to his (Stewart's) wife, which he (Leonard) paid to Richards, and that Leonard never paid any money on the lot except what he thus received from Stewart. It was objected that Stewart was not a competent witness to testify in respect of that matter in this cause. Appellees sue as the executors of the last will and testament of E. C. Fellows, deceased, who was the sole devisee or legatee of Leonard. We think it is clear that the defendant Stewart was therefore not a competent witness in his own behalf to testify to any transaction between himself and Leonard. (*Bragg* v. *Geddes et al.* 93 Ill. 39; *Hurd* v. *Brown*, 41 id. 125; *Alexander* v. *Crosthwaite*, 44 id. 359.) Nor was he competent to testify in his own interest when called by a co-defendant. *Whitmer* v. *Rucker et al.* 71 Ill. 410; *Way* v. *Harriman*, 126 id. 132.

It is urged, however, that he is a competent witness, first, because he acted as the agent of his wife in all matters relating to this property; and secondly, because this litigation was concerning the separate property of his wife. It is apparent, from what has already been said, that we are of opinion that this lot was not the separate property of the wife. At the time Leonard advanced to Richards the amount due on the note given for the purchase money of this lot, Mrs. Stewart was not

the owner of the lot, and is not shown to have then had any interest therein.

Stewart testifies, that he was married in 1860, and that his wife then had $1500, which she loaned to him, but at what date is not shown. At the time of such marriage he was entitled to reduce the money and personal property of his wife to possession, and upon so doing would become the owner thereof. A loan of money by the wife to the husband, prior to the passage of the Married Woman's act of 1861, would invest him with the ownership, and she would cease to have any interest therein. If, however, the loan was made after the passage of said act, the wife became simply a creditor of the husband, and if he invested the money thus borrowed in the purchase of land in his own name, no resulting trust would arise therefrom in her favor. When Stewart assigned the contract of purchase to Leonard as a security, he had paid no money of his own, or of any other person, for or on this property, if we except the installments of interest as they fell due on his note. If he intended to place the title of the lot in his wife, it is apparent he never did so. The only conveyance to her was by the deed of Leonard left in escrow in the bank at Joliet. This deed was not made until long after the rights of Leonard had attached, and was never in fact delivered. We do not think Mrs. Stewart is shown to have had an interest in this property, or that Stewart was her agent. He was therefore incompetent to testify to transactions occurring between him and Leonard in respect of his property in the lifetime of Leonard. He was, as a matter of course, competent to testify in respect to the alleged admission and declarations made by him and testified to by other witnesses, and in respect of matters occurring since the death of Leonard and Fellows.

If Stewart's testimony as to the ownership of the money advanced in paying Richards be rejected, as it must, there is but little competent evidence tending to sustain his contention. However, it is insisted there are circumstances proved tending

to sustain that view, one of which is, that Leonard, being in failing health, and intending to visit Colorado, made a deed of the property to Mrs. Stewart, but instead of delivering the same to her, or to any one for her, placed it in escrow in the First National Bank of Joliet, with this direction, indorsed over his signature, on the envelope containing the deed: "To be delivered in case of my death.—George M. Leonard." He returned from Colorado, and revoked the power to deliver the deed, but permitted it to remain with the bank. A plausible argument is based upon this circumstance, and it is insisted that the direction to deliver the deed in case of his death precludes the idea that Leonard could have understood that he held the title as security for the payment of money. It seems strange, if Leonard held the title as a naked trustee, that he did not deliver the deed to the grantee at its execution. No reason is shown for placing it in escrow. It is apparent that Leonard apprehended that he might not return from Colorado, and if it was necessary to protect Mrs. Stewart, no reason is shown why the deed should not have been delivered to her at once. The admissions of Stewart, testified to by Hobbs and Mrs. Fellows, clearly show that long after Leonard's death the deed was still in escrow,—at least, was so regarded by Stewart,—to be delivered when he should pay the sums he owed the Leonard or Fellows estate. It is apparent that the relations existing between Leonard and Stewart were friendly and confidential, and it can be of no importance now whether Leonard expected that the money he had advanced would be paid on the delivery of the deed, or intended a gift to Mrs. Stewart in the event of his death. As we have seen, after his return from Colorado, Leonard revoked the power of delivery with which he had invested the cashier of the bank, and subsequently devised the property in controversy, subject to the condition before mentioned, to Fellows. In 1876 Mrs. Stewart made a demand on the bank for this deed, and on its refusal to deliver it to her, obtained possession thereof by replevin,

and immediately placed it on record. This was after Leonard's death, and after the revocation of the direction to the bank to deliver it in case of his death. It was perfectly competent for Leonard to revoke the direction to deliver the deed, as was done. The placing of the deed on record, under the circumstances, impaired no right of complainants, no intervening rights having accrued, and the case must, in all respects, be treated as if the deed had remained undelivered.

The will of Leonard was objected to as incompetent as evidence. While it would not be competent evidence, and could not be considered as tending to establish Stewart's indebtedness to the testator, it was clearly competent for the purpose of showing Fellows' right of property, or, in other words, that whatever right Leonard had in respect of this property passed to Fellows, and upon his death, to complainants. If it was established that Leonard owned the premises in controversy in fee, or held the same as security for the payment of money, it was competent, by any legitimate evidence, to show that his right and title therein had become vested in complainant's testator. Nor are we prepared to say that this evidence was not competent to be considered, as tending to sustain the contention of appellees that the deed to Mrs. Fellows had not been delivered, and was not intended to be delivered by Leonard except upon the payment of the account open between himself and Stewart.

We are of opinion, however, that the decree is for too large a sum. It appears, from the evidence, that Leonard paid Richards $550, that being the amount then due on Stewart's note, and it also appears that afterwards Stewart paid Frank Fellows $50. We also think, while it is by no means clearly established, that $50 of the $550 paid Richards came from Stewart, and that $500, only, was advanced by Leonard. There was no assignment of the note by Richards to Leonard, and the whole case proceeds upon the theory that the money was advanced by Leonard to pay off and discharge the Richards

debt. The transaction was simply the advance of money by Leonard for the use of Stewart, and although the note taken up from Richards was retained by Leonard, it is evident, we think, that it was regarded by the parties, and was, in fact, money due on account from Stewart to Leonard. Indeed, the clause in the will of Leonard before referred to, where he speaks of the money "due me on an account now open between us," can, in the light of the circumstances here shown, relate to nothing else than the money thus advanced. It is not shown that there was any direction given by Stewart as to the application to be made of the $50 paid to Frank Fellows, and it appearing that Stewart was indebted to Fellows upon the two other notes mentioned, we are unable to determine whether that sum should be credited upon the amount here in controversy or not. The evidence fails to show how it was in fact applied by Fellows, for although no direction was given by Stewart, if applied by Fellows upon this claim, Stewart should receive credit for it here. The court allowed interest at ten per cent per annum, from October 13, 1874, to the date of the decree. This was error. There was no proof of an agreement upon the part of Stewart to pay interest, and it follows, that but six per cent interest should have been allowed.

For this error the decree of the circuit court and the judgment of the Appellate Court are reversed, and the cause remanded to the circuit court, with directions to enter a decree foreclosing said deed, as a mortgage, for the amount advanced by Leonard as here found, with six per cent interest per annum thereon, deducting payments, if any are shown to have been made. It is ordered that each party pay the costs respectively made by them in the Appellate Court and in this court.

*Judgment reversed.*

Mr. JUSTICE BAKER, having passed upon this case in the Appellate Court, took no part in its consideration here.