Argued February 19, decided May 12, modified on rehearing August 4, 1908.

## HALL v. O'CONNELL.

[95 Pac. 717; 96 Pac. 1070.]

MORTGAGES—DEED ABSOLUTE—EVIDENCE.

1. Evidence *held* to show that a person advanced the purchase price of land as a loan to the purchaser, and took title in himself from the vendor as security for the repayment thereof.

MONEY PAID—TIME OF PAYMENT—INTEREST.

2. Where money paid is intended as a loan, the law supplies the elements of a loan, such as time for payment, rate of interest, and agreement to repay.

MORTGAGES—DEED ABSOLUTE AS MORTGAGE—EVIDENCE.

3. A deed absolute on its face, given as security for the repayment of a loan, may be shown by parol to be intended in fact as a mortgage, and the rule applies where the purchaser of land borrows the purchase money and causes the title to pass directly from the vendor to the creditor as security for the loan.

SAME—INTENTION OF PARTIES.

4. Whether an absolute deed is a mortgage depends upon the intention of the parties, and not upon the form of words or of the instrument.

TRUSTS—EXPRESS TRUSTS—TAKING TITLE TO LAND PAID FOR WITH ANOTHER'S MONEY.

5. Where a purchaser of land in securing a loan has the title transferred by the vendor directly to the creditor, the conveyance not only operates as a mortgage as between debtor and creditor, but the grantee also becomes the trustee of the title for the purchaser, and the trust is enforceable as soon as the debt is paid.

MORTGAGES — ABSOLUTE DEED AS MORTGAGE—SUFFICIENCY OF EVIDENCE.

6. To establish an absolute deed as a mortgage, the proof must be clear, consistent, and convincing that it was intended to operate as a mortgage by the parties.

APPEAL AND ERROR—MATTERS NOT RAISED BELOW,

7. Defendant, in an action to have a deed declared a mortgage and to redeem, having defended on a claim of ownership, and made no suggestion of any other issue, may not, on rehearing, after reversal of the judgment for him, have considered the question of reimbursement for improvements, on the theory of their being made by him, a mortgagee in possession, in good faith, supposing he was the owner.

From Coos: JAMES W. HAMILTON, Judge.

This is a suit by E. O. Hall against Eugene O'Connell to have a deed, absolute on its face, declared to be a mortgage and to redeem therefrom. From a decree in favor of defendant, plaintiff appeals.

REVERSED: DECREE RENDERED.

For appellant there was a brief and oral arguments by *Mr. John S. Coke* and *Mr. Ephraim B. Seabrook.*

For respondent there was a brief and an oral argument by *Mr. Joseph W. Bennett.*

Mr. JUSTICE EAKIN delivered the opinion of the court.

1. This is a suit to have a deed absolute on its face declared to be a mortgage and to redeem therefrom. Prior to the 10th day of December, 1901, plaintiff had negotiated for the purchase of a portion of lot 3 of section 22, township 25 S., range 13 W., W. M., in Coos County, Oregon, from Mrs. Schetter, residing in San Francisco, for the price of $750, and had by wire directed her to forward to him at Marshfield, Oregon, a deed therefor. Plaintiff at that time had the promise of the purchase money from his son, but failed to secure it from that source, and by plaintiff's contention, on or about that date, he secured the promise of a loan of that amount of money from the defendant with which to pay for the land. For the purpose of securing him therefor, plaintiff, by agreement with defendant, wired to Mrs. Schetter at San Francisco to name defendant as the grantee in the deed; and on the 10th day of December, 1901, she did so execute the deed and forward it to Otto Schetter, to be delivered upon receipt of the money; and O'Connell paid the money and took the deed. Thereafter, on March 29, 1902, plaintiff paid to the defendant's clerk at his store $100 to apply upon the said loan, but defendant, when advised of it, returned the money to plaintiff, stating, as plaintiff asserts, that he did not want the money in small payments; and thereafter, on June 7, 1902, plaintiff tendered to defendant $800, the whole amount claimed by him to be due thereon, but the defendant refused to accept it, and asserted ownership of the property. Defendant, on the contrary, insists that Hall did not want the property and corresponded with Mrs. Schetter and negotiated the purchase for him; and that no talk of a purchase by Hall or a loan to him was had between them; and that he paid the money and took the title as a purchase for himself. The evidence clearly

establishes that Hall had negotiated the purchase for himself, and had wired for a deed before he and the defendant had had any conversation about it. This is evidenced by Otto Schetter as well as by Hall himself, and this fact tends strongly to discredit O'Connell's explanation of Hall's connection with it and his own negotiations through Hall. Hall is also corroborated by Mr. Nicholson, the surveyor, who says:

"Mr. Hall met me on the street, down near Walcott's, and asked me if I would make a survey for him, and stated that he was buying a piece of property there, but that Mr. O'Connell was going to pay for the surveying, and to drop into O'Connell's store and see if it was all right. I went into Mr. O'Connell's store, and he repeated the same thing and wanted me to make the survey, and stated Mr. Hall was buying a piece of property and that he was going to advance the money, and would pay me for the survey."

Hall is corroborated by Puskaline, who claims to have been present when the arrangement was made between Hall and O'Connell for the loan of the money. We think the evidence satisfactorily establishes that O'Connell loaned to plaintiff the money to pay for the land and that Hall procured the deed, to be executed in O'Connell's favor, as security for the repayment thereof, and that defendant holds the title to the land as security.

2. It is urged by defendant that there was no set time for the payment, rate of interest fixed, or formal agreement to repay, but the law supplies each of these elements if there was in fact a loan. It is also suggested that plaintiff made no opposition to defendant's possession of portions of the land, or to his making improvements thereon; but, part of those improvements was agreed upon at the time of the agreement for the loan, for defendant's convenience. However, defendant was not misled by the conduct of plaintiff, as he was diligent in asserting his rights. He tendered the first payment upon the loan within three and a half months, and the

whole debt within six months, from the time the advance was made.

3. A deed absolute on its face given as security for the repayment of a loan may be shown by parol to be intended in fact as a mortgage. This has been frequently so decided by this court, beginning with *Hurford* v. *Harned,* 6 Or. 362. But it is urged by the defendant that this is a purchase by defendant with his own money and a conveyance to him from the vendor and not from the plaintiff, and therefore does not come within the above rule, and is within the statute of frauds. But as we understand, the rule that a deed absolute on its face, given as security, may be shown by parol to be a mortgage, applies equally to the case of a purchaser borrowing the purchase money, and causing the title to pass directly from the vendor to the creditor as security for the loan.

4. It is a question of the intention of the parties and not the form of words or of the instrument. If the equitable interest in the property is in the debtor, equity will protect him. In such a case, Jones, Mortgages, says, at section 331: "The grantee in such case acquires title by his (the debtor's) act, and as security for his debt, and therefore holds the title as his mortgagee." Also 27 Cyc. 979, says: "If a person who has contracted for the purchase of land procures another to lend him the money necessary to make the payments, or to advance it for him, and has the deed made to the latter, with an agreement that he will convey the title to the former on repayment of the amount advanced, the transaction will amount to an equitable mortgage, if it was the understanding and intention of the parties, that the one should become debtor to the other for the money advanced, and that the land should be held merely as security for this debt. If this was their contract, the form in which they may have cast the agreement is immaterial. It is not necessary that the agreement to reconvey should be under seal, or even that it should be in writing; a mere oral

agreement will be sufficient in equity, if fully established. While it is necessary, as stated, that the transaction should be intended as a security for a debt or loan, no promise or personal covenant on the part of the borrower to repay the money is required to make it a mortgage in equity." *Niggeler* v. *Maurin,* 34 Minn. 118 (24 N. W. 369).

5. There is this additional element in the case, where a purchaser in securing a loan has the title transferred by the vendor directly to the creditor; namely, the conveyance operates not only as a mortgage as between debtor and creditor, but the grantee becomes the trustee of the title for the purchaser. As the title did not vest in the debtor, but the purchase being made with his money and the title taken in the name of the creditor, there arises a trust in favor of the debtor and enforceable as soon as the debt secured is paid. So, when the fact is determined that the loan was made by defendant to the plaintiff, and that the deed was so taken as security therefor, then it is established that the purchase was made in defendant's name with plaintiff's money, and when the debt is paid defendant holds but the naked title without any beneficial interest, and is deemed the trustee of the title for the plaintiff. It is so held in many cases on this subject. *Fleming* v. *Georgia R. Bank,* 120 Ga. 1023 (48 S. E. 420) ; *Campbell* v. *Freeman,* 99 Cal. 546 (34 Pac. 113). Jones, Mortgages, section 331, says: "In equity it is regarded as unnecessary that the conveyance should be made by the debtor. It is sufficient that he has an interest in the property, either legal or equitable. Having such an interest, if he procure a conveyance of the property to one who pays the price of it, or makes an advance upon it, under an arrangement that he shall be allowed to have the property upon repaying the money advanced, he has a right to redeem. The grantee in such case acquires title by his act, and as security for his debt, and therefore holds the title

as his mortgagee." This is entirely consistent with the holding in the *Sisemore* v. *Pelton,* 17 Or. 546 (21 Pac. 667); *Taylor* v. *Miles,* 19 Or. 551 (25 Pac. 143). When the loan and the fact that the conveyance was so made as security are established, we have a clear case of a purchase with plaintiff's money, and thus a resulting trust is established. The following additional cases are to this effect: *Hughes* v. *McKenzie,* 101 Ala. 415 (13 South. 609); *Stewart* v. *Fellows,* 128 Ill. 480 (20 N. E. 657); *Rogers* v. *Davis,* 91 Iowa 730 (59 N. W. 265); *McPherson* v. *Hayward,* 81 Me. 329 (17 Atl. 164); *Malloy* v. *Malloy,* 35 Neb. 224 (52 N. W. 1097); *Leahigh* v. *White,* 8 Nev. 147.

In *Campbell* v. *Freeman,* 99 Cal. 546, 547 (34 Pac. 113, 114), where the agreement and defeasance were in parol, it is held: "The rule is familiar that when, upon a purchase of real property, the purchase money is paid by one person, and the conveyance is made to another, a resulting trust immediately arises. * * The same rule prevails, if the money paid by the party taking the title is advanced by him as a loan to the other, and the conveyance is made to the lender for the purpose of securing the loan. But in the latter case the purchaser cannot demand the conveyance until he has paid the money advanced, and for which the land is held as security. In such a case the grantee holds a double relation to the real purchaser—he is his trustee of the legal title to the land and his mortgagee for the money advanced for its purchase—and, as in the case of any other mortgage which is evidenced by an absolute deed, is entitled to retain the title until the payment of the claim for which it is held as security."

In *Fleming* v. *Georgia R. Bank,* 120 Ga. 1023, 1026 (48 S. E. 420, 422), Carr purchased the lot in question from Dickey. Defendant advanced the price, and the conveyance was made by Dickey to the defendant as security; and it is said: "While his (Carr's) interest

in the land was only the equity of redemption, upon payment of the debt secured by the deed, Carr or his assignee could maintain a proceeding to compel a conveyance from the bank. Upon payment of the debt, a resulting trust would have arisen; and the bank, holding the naked legal title with no beneficial interest in the land, would be deemed the trustee of Carr."

6. So there remains only the question of fact whether the transaction between plaintiff and defendant was a loan, the repayment of which was secured by a deed from the vendor to defendant, absolute on its face, and intended between plaintiff and defendant as a mortgage. To establish this, the proof must be clear, consistent, and convincing that such was the intention of the parties. As said in *Stephens* v. *Allen*, 11 Or. 188, 196 (3 Pac. 168, 173), "As cases of this character must be determined upon their own special facts, it is admitted that these facts should be of clear and decisive import. They should lead the court to a satisfactory conclusion as to what the parties intended and meant by their contract, so that it may be enforced according to that intent." The testimony of plaintiff and defendant is in direct conflict upon almost every fact involved in these issues, but plaintiff is corroborated in his testimony by that of Nicholson and Puckaline, and also by the circumstance that he actually negotiated the purchase for himself, and acted promptly in tendering the repayment of the loan; and we think he has established by clear and convincing proof the facts necessary to a recovery. Therefore, the deed from Mrs. Schetter to the defendant, is, in fact a mortgage to secure the repayment of the said $750, interest, and taxes, and the defendant also holds the legal title to the property as trustee for the defendant. Upon the repayment of the sums so secured, defendant should be decreed to convey the said property to plaintiff. There is due to the defendant the sum of $750, with interest thereon at the rate of 6 per cent per annum from Decem-

ber 10, 1901, to June 7, 1902, the time of the tender, namely, $22.25, together with the taxes paid by the plaintiff on said property for the years 1901, 1902, 1903, and 1904, amounting to $55.85, making a total of $828.10.

The decree of the lower court is reversed, and one entered here in accordance with this opinion, with costs to appellant.

MR. CHIEF JUSTICE BEAN dissents from the conclusion here reached.          REVERSED: DECREE RENDERED.

---

Decided August 4, 1908.

## ON PETITION FOR REHEARING.

[96 Pac. 1070.]

MR. JUSTICE EAKIN delivered the opinion of the court.

7. This motion is accompanied by an extensive brief upon the right of a mortgagee in possession, having in good faith made improvements upon the premises, to be reimbursed therefor in case of a redemption, on the theory, that in this case the defendant in good faith supposed he was the owner when he made the improvements, and that plaintiff, with knowledge that defendant was so expending his money, made no protest. There can be no doubt that defendant thought he had such a title that he could hold the property, and on that basis made the improvements; but there can be no question but what he knew on March 29th, when plaintiff tendered him the $100, that the latter was claiming to be the owner, also on April 1st, when plaintiff again claimed his ownership, at which time they tried to compromise by dividing the property, and again on June 7th, when plaintiff tendered the $800 and demanded a deed. Certainly no greater or other protest against the improvements than these were necessary. And it may be a question whether defendant did not act at his peril.

But, even though it were admitted that defendant is entitled to the value of such improvements as he made,

we cannot consider that question, for the reason that it is not before us. He has defended this suit upon a claim of ownership, and has made no suggestion of any other issue. What evidence was given at the trial as to the improvements was not to determine the amount due upon redemption, but to show his acts of ownership and good faith, and, as to the claim made in the motion that he was to have a part of the property, has never been asserted by the defendant. This is an equity case, tried here upon the issues made by the pleadings and upon the proofs made at the trial. Plaintiff has not had an opportunity to meet any of these issues, nor has the court had any notice of them until this motion was filed. In the cases cited in the briefs, so far as I have examined the issues, the question was in some manner raised by the pleadings. *Hatcher* v. *Briggs,* 6 Or. 31, is in point upon that question, where defendant admitted his want of title and by cross-bill set up his expenditures and his good faith, and asked protection.

As to Kruse's lease, it is sufficient to say that he is not a party, nor is any claim by him disclosed as an issue, and if he leased from the defendant without knowledge of plaintiff's rights, or with plaintiff's consent, equity will protect him. What is said as to the want of issues as to the improvements is true also as to the taxes. They have not been pleaded; but, in view of plaintiff's offer to include them in his tender, we have added them to the debt so far as they are admitted by him. It will be proper to include in the amount due defendant the $15 paid to the surveyor and the $5 paid for the deed; and to this sum, also, the clerk shall add the amount of taxes paid by the defendant on this property subsequent to the tax for the year 1904, to be ascertained by certificate of the sheriff of the county.

The former decree will be modified to that extent.

REVERSED: MODIFIED ON REHEARING.