Argued Jan. 12, decided Jan. 31, rehearing denied Feb. 21, 1911.

# BICKEL *v.* WESSINGER.

[113 Pac. 34.]

PLEADING—ISSUES, PROOF AND VARIANCE.

1. Where the variance between the complaint and the evidence was not substantial and did not mislead defendant to his prejudice, and related only to minor matters, alleged in the complaint by way of inducement, which were not strictly proved, the variance was immaterial.

MORTGAGES—FORECLOSURE—EFFECT.

2. A decree foreclosing a first mortgage rendered in a suit against the mortgagor and against the second mortgagee, who made no answer, extinguishes the second mortgage lien.

MORTGAGES—FORECLOSURE—REDEMPTION.

3. Notwithstanding a sale under a decree foreclosing a first mortgage rendered in a suit against the mortgagor and against the second mortgagee who defaulted, the mortgagor has an equity of redemption at all times prior to the execution of the sheriff's deed.

MORTGAGES—FORECLOSURE—REDEMPTION.

4. A decree foreclosing a first mortgage was rendered in a suit against the mortgagor and against the second mortgagee who defaulted. The second mortgagee purchased the premises at the sale for the amount of the decree. Before the confirmation of the sale, the second mortgagee agreed to give the mortgagor three years to redeem or whenever he paid back the money the second mortgagee would return the property. *Held* to prove an *implied* promise of the mortgagor to refund the money in consideration of the extension of time in which to redeem.

CONTRACTS—CONSIDERATION—FORBEARANCE.

5. A forbearance to redeem the property sold under a mortgage foreclosure decree is a sufficient consideration to support a promise to extend the time within which to redeem.

FRAUDS, STATUTE OF—CONTRACTS—PERFORMANCE WITHIN A YEAR.

6. Under Section 808, L. O. L., making void an agreement that, by its terms, is not to be performed within a year from the making thereof, only a parol agreement which shows by its terms or within the contemplation of the parties that it cannot be performed within a year is void.

FRAUDS, STATUTE OF—CONTRACTS—PERFORMANCE WITHIN A YEAR.

7. A parol agreement by a purchaser at a mortgage foreclosure sale to give the mortgagor three years in which to redeem or to return the property whenever he pays back the money paid for the purchase is not within Section 808, L. O. L., making void an agreement that, by its terms, is not to be performed within a year, because the mortgagor may redeem at any time prior to the three years.

MORTGAGES—DEEDS ABSOLUTE IN FORM—EVIDENCE.

8. It may be shown by parol that a deed absolute in form is a mortgage, whether the deed is between the parties to the suit or is procured to be made to the grantee therein by a third person.

MORTGAGES—FORECLOSURE—AGREEMENTS.

9. Prior to the execution and delivery of the sheriff's deed on a mortgage foreclosure sale, the purchaser at the sale may agree with the mortgagor to hold the property for him and to extend the time in which to redeem.

MORTGAGES—FORECLOSURE—DEVESTING OF TITLE.

10. The process of devesting a mortgagor of his title in the property is incomplete until the execution and delivery of the sheriff's deed on mortgage foreclosure sale.

MORTGAGES—DEEDS ABSOLUTE IN FORM—EVIDENCE.

11. To show that a deed absolute in form was intended as a mortgage, the evidence must be clear.

MORTGAGES—DEEDS ABSOLUTE IN FORM AS MORTGAGES.

12. The test whether an agreement is an agreement to reconvey property on the payment of a specified sum, or a mortgage, is: Was the preceding debt extinguished, or was it continued? If it was extinguished, the arrangement is at best only a contract for the resale of the property, while, if the debt was continued, the agreement is a mortgage.

MORTGAGES—DEEDS ABSOLUTE IN FORM AS MORTGAGES.

13. In case of doubt between a contract for the resale of property and a mortgage, the latter will be upheld.

MORTGAGES—EVIDENCE—SUFFICIENCY.

14. Evidence *held* to show that an arrangement between a purchaser at a mortgage foreclosure sale and the mortgagor was a mortgage and not a contract to reconvey the property.

MORTGAGES—FORECLOSURE—REDEMPTION—LACHES.

15. A mortgagor who obtains a promise from the purchaser at the foreclosure sale to return the property on the mortgagor paying back the money paid with interest within three years may rely on the agreement of the purchaser, and, until the purchaser either denies or repudiates the agreement, the mortgagor is not guilty of laches and is not affected by limitations so as to bar a suit to redeem the property on the ground that the agreement is an equitable mortgage.

From Multnomah: EARL C. BRONAUGH, Judge.

Statement by MR. JUSTICE BURNETT.

In January, 1895, the plaintiff, Frederick Bickel, gave a mortgage to the United States Mortgage & Trust Company for $50,000 on block 32 in the city of Portland, the property in dispute, and afterwards on July 26, 1898, he gave a second mortgage on the same property to Henry Weinhard for $10,000, evidenced by his promissory note of that date. Also on July 26, 1898, he gave another note and second mortgage to Weinhard for $10,000 on

the north half of block 9 in Couch's Addition to the city of Portland. In May, 1900, the United States Mortgage & Trust Company brought suit to foreclose its $50,000 mortgage on the property in dispute, making Weinhard a party defendant as a subsequent mortgagee. Weinhard made no answer to that foreclosure suit, and a decree was rendered therein against Bickel foreclosing the mortgage which he had given to the trust company and against Weinhard barring and foreclosing him from all interest in the property by virtue of his subsequent mortgage. The property was sold on execution under that decree June 30, 1900. Prior to that sale and for long afterwards the plaintiff was in financial distress. Even before the foreclosure suit the plaintiff importuned Weinhard either to buy the $50,000 mortgage or loan him the money to pay it, but Weinhard refused and put him off. Under these circumstances, Weinhard attended the execution sale and bought the property for the sum of $55,106.50, being the amount of the decree for the plaintiff in that suit. On July 12, 1900, before the confirmation of that sale, according to the testimony of the plaintiff, he visited Weinhard at his office and said to him: "I heard you have bought the property." Weinhard answered: "Yes, but I did not buy it for myself. I have got more property now than I care for. I bought it." Bickel then said: "Now, the law allows me one year to redeem it. What do you say?" To which Weinhard replied: "I will give you three years, or whenever you pay me back the money I will return the property—with five per cent interest." The testimony shows that the plaintiff and Weinhard had been acquainted on very friendly terms for many years and had loaned money to each other back and forth at different times in the past. The plaintiff claims now as his ground of suit here that he relied on Weinhard's promise, made no effort to redeem after the sale, and allowed the foreclosure proceeding to go to the

execution of the sheriff's deed, and contends that the deed is an equitable mortgage, from which he brings this suit to redeem the property in dispute. The circuit court dismissed the suit, and plaintiff appeals.          REVERSED.

For appellant there was a brief over the names of *Mr. H. B. Nicholas, Mr. Newton McCoy* and *Messrs. Dolph, Mallory, Simon & Gearin.*

For respondents there was a brief over the names of *Messrs. Williams, Wood & Linthicum.*

MR. JUSTICE BURNETT delivered the opinion of the court.

There are other circumstances in evidence, but the corner stone of plaintiff's case is the conversation of July 12th already quoted. At the outset it is due to the memory of Henry Weinhard to say that the record does not disclose that he ever did an act or uttered a word inconsistent with the statement thus attributed to him by plaintiff. Further, so far as the record reveals, there is no showing whatever, as against any of the parties, of that cunning craftiness and deceit which makes fraud so detestable to honest men. The attitude of all these litigants seems to be that of those who, not having the same viewpoint on account either of interest or prejudice or want of knowledge of the facts, have misapprehended the consequences which in equity follow from substantially admitted facts.

It is impracticable to make extended quotations from the voluminous testimony in this case. It will be sufficient to advert to a few of the more salient points. On July 12, 1900, the plaintiff paid the interest to July 10th of that year on both the $10,000 notes already mentioned. The note for the loan and second mortgage on block 32 was retained by Weinhard, and so far as the evidence shows was never surrendered to the plaintiff. Indeed, on a subsequent occasion when the plaintiff settled the

mortgage on the property in block 9, the surrender of the $10,000 note secured by the second mortgage on block 32 was discussed in a spirit of adjustment of the dealings between the parties; but, failing to agree upon such adjustment, the defendants here retained the note secured formerly by the mortgage on block 32, standing upon what they conceived to be their legal rights, and surrendered only the $10,000 note secured by the mortgage on the property in Couch's Addition. At the time of paying the interest to July 10, 1900, the plaintiff surrendered the possession of the property in question, giving up the keys and furnishing a list of tenants and rentals. Weinhard died September 20, 1904, and until his death he collected the rent, kept up the taxes, repairs, and running expenses of the property in question, and the same has been continued by his successors in interest.

The witness L. L. Schuman testifies to a conversation with Weinhard soon after the sheriff's sale, in which Weinhard stated that he had bought the property, did not care anything about buying the property of his friend, and that he would prefer not to have it at all. He said that he would sooner not have the property; but as it was, he had to take it, and that, whenever Mr. Bickel would be in a position to pay him back, why he could have the property back.

The witness Paul Wessinger, son-in-law of Mr. Weinhard, testifies to a conversation occurring between him and Weinhard after the execution of the sheriff's deed substantially as follows: Weinhard said: "Well, now, I hear from Adolph Burkhardt that Bickel says around town I took his property away from him." Wessinger said: "Well, that is all foolish talk." Weinhard answered: "Well, of course it is. I will give Mr. Bickel another year to pay me back and get his property back, and that will stop that talk"—or something to that effect. It may be

remarked in passing, that plaintiff denies making any such statement as that attributed to him by Burkhardt.

The witness D. W. Hoelbing testifies that in the latter part of 1900 or the first part of 1901 Mr. Weinhard told him that he had been induced to allow Mr. Bickel another year for selling this property as his agent, and that he should receive all the proceeds above what he owed him and the expenses of improving the buildings.

Mrs. Louise Weinhard, widow of Henry Weinhard, testifies:

"When Mr. Burkhardt told Mr. Weinhard that Mr. Bickel scolded about that we have taken his property away, he says: 'Well, after this one year is passed he can have it another year.'"

The testimony discloses that at the time of and subsequent to the sheriff's sale for several years there was but little demand for real property of the kind in question; that plaintiff tried in vain to effect a sale of the property, and so the matter went on until January, 1906, after the death of Weinhard, the plaintiff took up with the defendants the subject of redeeming the property, which defendants declined to consider. Afterwards, on April 12, 1907, the plaintiff made a formal written offer to redeem and demanded an accounting of the rents and profits of the property for the purpose of arriving at the amount necessary to redeem the same.

1. The defendants here contend in argument that the evidence of the plaintiff does not conform to the pleading. It is true that some minor matters alleged by way of inducement are not strictly proven, for instance, that Weinhard was willing and able to furnish the money; but the evidence in the main, taking the whole case, corresponds to the pleading in its general scope and meaning, so that there is no substantial variance between the pleadings and the evidence which could mislead the defendants

to their hurt. Indeed, it was not disclosed, so far as the record shows, that they were so misled.

2. It is next contended that there is no mutuality in the contract between plaintiff and Weinhard. The plaintiff was seeking the extension of time which he says Weinhard granted. By the foreclosure suit Weinhard's mortgage lien upon the property in question was extinguished on his default.

3. Notwithstanding the sale, the plaintiff had an equity of redemption at all times prior to the execution of the sheriff's deed.

4. Thus equipped with an asset freed from all claim except the sale price, he approached Weinhard and secured from him the extension of time disclosed by the conversation already quoted. These circumstances disclosed by the evidence are competent to prove the implied promise of the plaintiff to refund the money in consideration of the extension of time.

5. Moreover, a forbearance to redeem the property was a sufficient consideration to support the promise to extend the time: *Beebe* v. *Wisconsin Mortgage Loan Co.,* 117 Wis. 328 (93 N. W. 1103).

6. It is further urged that the alleged contract is not in writing, is not to be performed within a year, and is therefore void within the statute of frauds. Section 808, L. O. L., makes void "an agreement that by its terms is not to be performed within a year from the making thereof." It is only where the agreement shows by its terms or within the contemplation of the parties that it cannot be performed within a year that the statute intervenes.

7. It was possible for Bickel, so far as the terms of the contract are concerned, to have redeemed this property the next day after the agreement was made. No restriction appears to have been made in that respect. The time was extended, but it was competent for him to redeem

without suit at any time prior to the expiration of the three years mentioned: *Devalinger* v. *Maxwell,* 4 Pennewill (Del.) 185 (54 Atl. 684) ; *Durham* v. *Hiatt,* 127 Ind. 514 (26 N. E. 401) ; *Southwell* v. *Beezley,* 5 Or. 143, 459.

8. It is further contended that this suit, being based upon the alleged contract for the sale of land, is void because it is not in writing. This is not a suit for the specific performance of a contract·for the sale of land. It is a suit in equity to declare a deed absolute on its face to be a mortgage and to be allowed to redeem the real property therein described. This contention may be dismissed with the statement of the well-established principle that it is competent to show by parol that a deed absolute on its face is intended to be a mortgage, whether the deed be between the parties to the suit or procured to be made to the grantee therein by some third party. The line of authorities in Oregon, ample on that subject, begin with *Hurford* v. *Harned,* 6 Or. 362, and continue in uninterrupted sequence to *Hall* v. *O'Connell,* 52 Or. 164 (95 Pac. 717: 96 Pac. 1070).

9. The authorities are abundant that at any time prior to an execution sale a debtor may make a parol agreement even with the creditor, that the other party to the agreement shall take the title in his own name and hold the same as security for the debt and extend the time for payment. The situation is not different in principle after the sale and prior to the execution of the sheriff's deed.

10. The process of divesting the judgment debtor of his title in the property is incomplete until the execution and delivery of the sheriff's deed, so that it matters not whether the parol agreement was made before or after the sheriff's sale, provided it is made prior to the execution of the deed.

11. Equity regards the rights of a distressed debtor with almost guardian like care, and, while, it requires clear proof of a parol defeasance of a deed absolute in

form, yet, when the defeasance clause is once shown, equity will go to the utmost in affording relief and in cases of doubt between a mortgage and a conditional sale will almost always decide the question in favor of a mortgage: *Plummer* v. *Isle*, 41 Wash. 5 (82 Pac. 1009: 2 L. R. A. (N. S.) 627: 111 Am. St. Rep. 997). That some arrangement looking to the extension of the time and the restoration to plaintiff of the property in dispute existed is manifest from the evidence already alluded to. It is true that plaintiff is the principal witness in his own behalf, and stands alone as to the principal testimony in the case; but by law he is a competent witness. He submitted to searching cross-examination. No successful effort is made directly to discredit him by any witness, and no attack is made upon his reputation for truth and veracity. He is corroborated by the testimony of disinterested witnesses and by admissions of at least one of the defendants. The testimony is convincing, as before stated, that some arrangement existed between Weinhard and the plaintiff. It is urged that the agreement is one not likely to have been made by Weinhard; that he would not extend the time and take for security a property which he had bought at a sheriff's sale and upon which he had allowed his lien by mortgage to be extinguished by default. The agreement might be improvident from the standpoint of a miser, but not from the standpoint of a generous and munificent friend. The testimony shows that Weinhard was taciturn and reserved, but underneath that grave exterior he was large-hearted and magnanimous. What is more natural than that such a man would go to the utmost to aid his friend of early days?

Finally, there being some agreement between the parties, the question recurs: Was it an agreement to sell back the property, or was it a mortgage? The test held by most authorities to be the controlling one in such cases

is this: Was the preceding debt extinguished, or was it continued? If it was extinguished, the arrangement would only be at best a contract for the resale of the property; but, if the debt was continued, it is taken to be a mortgage. The distinction is very clearly pointed out in the case of *Hickox* v. *Lowe*, 10 Cal. 197, by Judge Field, and in *McNamara* v. *Culver*, 22 Kan. 661, by Judge Brewer, both of whom afterwards served with great ability as justices of the Supreme Court of the United States. It will be remembered that the $10,000 note for which the mortgage was given as security upon the property in question was never surrendered to the plaintiff, and that he paid interest on the same to Mr. Weinhard after the sheriff's sale. The indebtedness existing between the plaintiff and Weinhard was thus continued, and that circumstance alone, if no other, would indelibly stamp the transaction between them after the sale as an equitable mortgage.

13. The doctrine that, in cases of doubt between a contract for the re-sale of property and a mortgage, the latter will be upheld, is founded upon the wholesome and equitable reason that, if the transaction is determined to be an agreement for resale, it is so nominated in the bond that unless by an appointed time the former debtor pays, he loses all and the creditor gains all; but, on the contrary, if it is held to be a mortgage, equity will seize upon the property, convert it into money, returning to the creditor his own with interest and to the debtor the remainder, so that each is saved harmless as near as may be.

14. We conclude that the transaction referred to is a mortgage. It being a mortgage, if the mortgagee refuses to foreclose the same, the mortgagor has a cause of suit to redeem; for one right is the complement of the other.

15. The plaintiff is not guilty of laches and had a right to rely upon the agreement of Weinhard, until the defendants either deny or repudiate the same, without being

affected by the statute of limitations: *Potter* v. *Kimball,* 186 Mass. 120 (71 N. E. 308.)   The defendants occupy the situation of a mortgagee in possession and should be credited with the amount of Weinhard's bid at the sale, $55,106.50, with interest since June 30, 1900, the day of the sale, and the further sum of $10,000 with interest since July 10, 1900, with the sums expended for taxes, necessary running expenses, and repairs of the property in dispute since they and Weinhard have been in possession.   The rate of interest should be 6 per cent because the act of plaintiff in paying off the mortgage on the property in Couch's addition at 6 per cent, instead of 5 per cent interest is a circumstance sufficient to turn the scale against him on that question. The defendants should be charged with all rent on the property since Weinhard took possession.

In accordance with these provisions, the decree of the circuit court is reversed and remanded to that court, with directions to ascertain by an accounting what balance is due from the plaintiff to the estate of Henry Weinhard; to then enter a decree to the effect that within a certain reasonable time, to be fixed by the court, the plaintiff may pay into court for the defendants the balance thus ascertained, and that within a certain further time after such payment, also to be fixed by the court, the defendants convey the property in dispute to the plaintiff by good and sufficient deed in due form of law, or that in default of such conveyance such decree stand and operate as such deed; and further, that in default of such payment by plaintiff, the real property in dispute be sold in the manner provided by law and the proceeds applied, first, to payment of expense of the sale, second, to payment of the balance found due by such decree to the estate of Henry Weinhard, and that the remainder be paid to plaintiff.   The plaintiff is entitled to costs and disbursements in both the Supreme and circuit courts.

REVERSED.