## GROVER *v.* HAWTHORNE ESTATE.

[114 Pac. 472 : 121 Pac. 808.]

APPEAL AND ERROR—FILING TRANSCRIPT—DELAY—RELIEF—"PROVISIONAL REMEDY."

1. Respondent, having moved to dismiss the appeal for failure to file the transcript in time, appellants suggested a diminution of the record, and obtained an order requiring the clerk of the circuit court to certify up a *nunc pro tunc* order extending the time for filing. Respondent then applied, under Section 832, L. O. L., to have the persons, on whose affidavits the order on the circuit clerk was obtained, appear before the clerk of the Supreme Court for examination, in aid of an application to vacate the extension of time. *Held,* that such order on the circuit court clerk was not a "provisional remedy," within Section 832, L. O. L., to which cases the proceeding expressly is limited.

APPEAL AND ERROR—FILING TRANSCRIPT—EXTENSION OF TIME—VACATING.

2. The *nunc pro tunc* order extending the time having been made in the lower court, any proceedings to vacate must be there, including proceedings to obtain evidence therefor.

MORTGAGES—ABSOLUTE DEED AS MORTGAGE—PAROL EVIDENCE.

3. A deed absolute on its face may be shown by parol to have been intended as a mortgage.

MORTGAGES—ABSOLUTE DEED AS MORTGAGE—CONVEYANCE AS SECURITY.

4. Where a conveyance in the form of an absolute deed is given upon the creation of a new debt or as security for a pre-existing debt, it is in effect a mortgage.

MORTGAGES—ABSOLUTE DEED AS MORTGAGE—SUFFICIENCY OF EVIDENCE.

5. Evidence in a suit to declare a deed, absolute on its face, to be in effect a mortgage and to redeem therefrom, *held* sufficient to show that the deed was given as security and was in effect a mortgage.

MORTGAGES—REDEMPTION—RIGHT TO REDEEM.

6. The maxim, "Once a mortgage, always a mortgage," is applicable where the grantee in a deed absolute on its face intended that the conveyance should operate as a mortgage if the grantor should pay money due, or, if he should fail to do so, then that it should be an absolute deed, and under such conditions the right of the mortgagor can be extinguished only by foreclosure and sale.

MORTGAGES—REDEMPTION—AGREEMENT TO FORFEIT.

7. However strongly the parties to a mortgage may express their agreement that there shall be no redemption on the mortgagor's failure to pay the debt as stipulated, such intent cannot be enforced, and though the deed in question contains a condition that it shall be absolute and without redemption in default of payment there is a right to redeem.

MORTGAGES—ABSOLUTE DEED AS MORTGAGE—ADMISSIBILITY OF PAROL EVIDENCE.

8. Parol evidence is admitted to show that a deed absolute on its face was given as a mortgage to establish the intent of the parties, and to overcome the presumption that the deed is what it purports upon its face to be, and that the agreement is evidenced by more than one written instrument does not change the rule.

PRINCIPAL AND AGENT—RATIFICATION—ACCEPTANCE OF BENEFITS—PROPERTY ACQUIRED BY AGENT.

9. Where a principal has accepted a deed negotiated by his agent, to retain the benefits of part of the transaction he must ratify and assume the burdens of the whole transaction.

EVIDENCE—ADMISSIONS OF AGENT—SCOPE OF AUTHORITY.

10. A principal is not only liable for the acts of his agent in the main transaction, but for his acts or admissions within the scope of the authority confided to him respecting the subject-matter, if done or made at the same time and constituting a part of the res gestae.

---

Decided March 26, 1911.

## ON MOTION TO EXAMINE WITNESSES.

[114 Pac. 472.]

From Multnomah: HENRY E. MCGINN, Judge.

This is a suit by LaFayette Grover and Elizabeth Grover against the Hawthorne Estate and Rachel Hawthorne. Respondents file motion to require affiants in the affidavits filed in this court on March 15, 1911, to appear before the clerk of this court for examination.

MOTION DENIED.

*Mr. Chester V. Dolph, Mr. Samuel T. Richardson,* and *Messrs. Snow & McCamant* for the motion.

*Messrs. Manning & White, Mr. Robert E. Hitch* and *Mr. Edward S. J. McAllister, contra.*

Opinion Per Curiam.

In this cause the appeal was perfected on January 2, 1911. The transcript was filed on February 28, 1911. On March 10, 1911, respondents moved to dismiss the appeal, because the transcript was not filed within the time limited by law. Appellants filed a motion on March 15, 1911, suggesting a diminution of the record, and secured an order on the clerk below to certify to this court a certain order made by the lower court on March 10, 1911, *nunc pro tunc,* as of date January 30, 1911, extending the time for filing the transcript on appeal thirty days. Thereafter, on March 23rd, respondents applied to this court, under the provisions of Section 832, L. O. L., for an order requiring the affiants in the affidavits filed in this court on March 15, 1911, to appear before the clerk of this court that they may be examined by respondents concerning the statements set forth in such affidavits in aid of an application to vacate the *nunc pro tunc* order.

The order of this court upon the clerk of the lower court, of date March 15th, above mentioned, is not a provisional remedy within the meaning of Section 832, L. O. L. Nor is this court the proper place to take evidence upon proceedings pending in the circuit court. If the *nunc pro tunc* order is applied for in the lower court, the right to it must be determined by that court.

The application is denied.          Motion Denied.

Argued Feb. 8, decided March 5; rehearing denied June 4, 1912.

ON THE MERITS.

[121 Pac. 808.]

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit to declare a deed to be in effect a mortgage, and to redeem therefrom. From a decree in favor of defendants, plaintiffs appeal.

On March 27, 1900, plaintiffs executed to defendant, Rachel L. Hawthorne, a deed of an undivided one-half of the south half of the north half of the west half of the donation land claim of Thomas and Minerva Carter, situated in sections 4 and 5, in township 1 south of range 1 east of the Willamette meridian, in Multnomah County, State of Oregon, which deed plaintiffs allege was executed and delivered to Rachel L. Hawthorne as security for certain sums of money then due, and thereafter to be paid by her, and was intended to be, and is, in effect, a mortgage. The deed was recorded August 26, 1907, in book 401 of Deed Records of Multnomah County, Oregon, at page 136. Thereafter defendant Rachel L. Hawthorne executed a deed for said real property to the defendant, the Hawthorne Estate, a corporation. At the time of the execution of this conveyance, the property in question was owned in equal, undivided interests by Mrs. Hawthorne and LaFayette Grover. The land was incumbered by a mortgage for a large sum of money payable to the German Savings & Loan Society, a corporation, which was threatening a foreclosure of the mortgage security. LaFayette Grover, Mrs. Hawthorne, and one John Kineth, who was previously interested in the real estate, were personally liable upon this mortgage, although the Kineth interest in the property had been transferred to Mrs. Hawthorne, who assumed Kineth's part of the mortgage debt. At this time LaFayette Grover and Rachel Hawthorne were both owing large sums of money.

Plaintiffs allege that, in order to save their interest in the real property, and to secure money wherewith to subsist, they entered into an agreement with Rachel L. Hawthorne, at the time of the execution of the deed, whereby she was to make monthly payments to the Grovers of $100 for a period of fifty months, pay the Edward S. Kearney mortgage of $4,500, pay the interest and $1,000 monthly on the German Savings & Loan Society mortgage of $22,000 upon which foreclosures were then threatened, and also pay certain other creditors, as well as the taxes and assessments on the property. The plaintiffs allege that the deed was executed and delivered to Mrs. Hawthorne as security for all sums of money that LaFayette Grover was then owing her, and for such future advances as were to be made to the Grovers, and for no other purpose.

Defendants deny the several allegations of the complaint to the effect that the deed was intended as a mortgage. And defendant Rachel L. Hawthorne alleges that on and prior to April 27, 1900, arrangements were made whereby she was to release plaintiffs from all and every claim that she had against them, as well as to suffer the release of plaintiffs' property in the south half of the north half of the west half of the donation land claim of Thomas and Minerva Carter, in sections 4 and 5, in township 1 south of range 1 east of the Willamette meridian, from the lien and operation of the second mortgage of the German Savings & Loan Society; that she was to assume the whole unpaid portion of such mortgage, and all unpaid taxes and claims against the land described in the deed; that she was to pay plaintiffs $100 monthly for fifty months, commencing April 27, 1900, the installments to be paid on the first of each month; and that plaintiffs were to, and did, convey to her all their interest in the land, by deed of April 27, 1900, pursuant to said arrangement. Defendant Rachel Hawthorne also alleges that she

performed all of the above conditions on her part; that she did protect plaintiffs from all claim and liability on account thereof; that she executed and delivered a written contract to plaintiffs for the payment of $100 per month for fifty months; that she also executed and delivered a written instrument (hereinafter set out) to plaintiffs giving them the right of option to repurchase an undivided half of the land described in the deed; and that she has been the sole owner of all the land up to and including April 30, 1909, when she sold and conveyed the same to the defendant the Hawthorne Estate.

The deed in question is in the following form:

"Know all men by these presents: That we, L. F. Grover and Elizabeth Grover, his wife, of the city of Portland, county of Multnomah, and State of Oregon, in consideration of one dollar ($1.00) to us in hand paid, by Rachel L. Hawthorne, widow of the same place, have bargained and sold, and by these presents do grant, bargain, sell and convey unto said Rachel L. Hawthorne, her heirs and assigns, all the following bounded and described real property, to wit: All of our undivided half of the south half of the north half of the west half of the donation land claim of Thomas and Minerva Carter, situated in sections four (4) and five (5), in township one (1) south of range one (1) east of the Willamette meridian. Together with all and singular the tenements, hereditaments and appurtenances, thereunto belonging or in any wise appertaining, and also all our estate, right, title and interest in and to the same. To have and to hold, the above described and granted premises unto the said Rachel L. Hawthorne, her heirs and assigns forever. In witness whereof, we, the grantors above named, have hereunto set our hands and seals, this 27th day of March, A. D. 1900.

L. F. Grover,        (Seal.)
Elizabeth Grover   (Seal.)

Signed, sealed and delivered in the presence of us as witnesses:

Geo. P. Lent,
Eugene G. White."

Here follows the certificate of acknowledgment.

On the same date defendant Rachel L. Hawthorne executed to plaintiffs the agreement mentioned on pages 50 and 51 of the answer, which is as follows:

"Know all men by these presents, that I, Rachel L. Hawthorne, for and in consideration of an absolute deed this day made by L. F. Grover and Elizabeth Grover to me conveying to me the following described real property, to-wit: Their undivided half of the south half of the north half of the west half of the donation land claim of Thomas and Minerva Carter, situated in sections four (4) and five (5) in township one (1) south of range one (1) east of the Willamette meridian, lying and being in the city of Portland, county of Multnomah, and State of Oregon, do hereby covenant and agree to pay to said L. F. Grover and Elizabeth Grover, or to their heirs and assigns, the sum of one hundred dollars ($100) per month for fifty (50) months from this date, on or before the first day of each month hereafter; the first payment of one hundred dollars having been this day made; the second payment to become due on or before the first day of May, A. D. 1900. The foregoing agreement to be binding upon myself, my heirs, executors, administrators or assigns. In witness whereof, I have hereunto set my hand and seal this 27th day of April, A. D. 1900.

Rachel L. Hawthorne.    [Seal.]<br>[Seal.]"

The other instrument referred to in the answer, which was drawn up and signed by Rachel L. Hawthorne apparently for the purpose of being executed by plaintiffs, but which was never signed by them, is as follows:

"This agreement, made and entered into this 27th day of April, A. D. 1900, by and between Rachel L. Hawthorne, of Portland, Oregon, and L. F. Grover and Elizabeth Grover, his wife, of the same place, witnesseth: That the said Rachel L. Hawthorne, for a valuable consideration, does hereby grant and give unto said L. F. Grover and Elizabeth Grover, their heirs and assigns, the exclusive option and privilege of purchasing

from the said Rachel L. Hawthorne, at any time within three years from the date hereof, the following described real estate situate in the city of Portland, county of Multnomah, and State of Oregon, to-wit: An undivided half of the south half of the north half of the west half of the donation land claim of Thomas and Minerva Carter, situated in sections four (4) and five (5), in township one (1) south of range one (1) east of the Willamette meridian, for the cash price and consideration of ............ dollars, and also all taxes which said Rachel L. Hawthorne may have paid upon said property, and all sums of money which she may have paid for the redemption of the same from tax sales; and also all sums of money which said Rachel L. Hawthorne shall have paid for one-half on the interest on the note and mortgage for the sum of $22,000 held by the German Savings & Loan Society of San Francisco, California, upon said real property; and also one-half of any part of the principal of said mortgage which shall have been paid by said Rachel L. Hawthorne between the date of the execution of this agreement and the exercising of the option herein provided for; and also one-half of all moneys which shall have been expended by said Rachel L. Hawthorne for any purpose for the benefit or improvement of the real property, one-half of which is covered by this option; and also all sums of money which said Rachel L. Hawthorne shall have paid to said L. F. Grover and Elizabeth Grover, at the rate of one hundred dollars ($100) per month, between this date and the date of the exercising of said option; and also interest at the rate of eight (8) per cent per annum upon all sums of money which may hereafter be advanced as aforesaid from the date of the advancement thereof until the date of the exercising of the option herein provided for. It is distinctly understood and agreed by and between the parties hereto that time is the essence of this contract and that the said L. F. Grover and Elizabeth Grover hereby accept this option with the distinct understanding that the same is not a defeasance, and that the same does not constitute an equitable interest in the real property hereinbefore described; nor is the same to be construed by any court as a defeasance, or an equitable interest in said real property. Now, therefore, in order

to emphasize the understanding and agreement relative to the execution and delivery of said deed and the giving of this option, the parties hereto do hereby agree and declare for themselves as well as their heirs, executors, administrators and assigns that the said sale of said real property so made by said L. F. Grover and Elizabeth Grover to said Rachel L. Hawthorne was and is an absolute, unconditional sale, and not by way of mortgage or security; that this instrument is not a defeasance, nor is the same to be construed by any court as a defeasance, or as constituting an equitable interest in said real property hereinbefore described; that it is what it purports to be, to-wit, an exclusive option only that the said L. F. Grover and Elizabeth Grover, their heirs or assigns, may purchase said real property within the time limited only, in like manner and effect as if they had never owned the same. It is further mutually agreed by and between the parties hereto that said Rachel L. Hawthorne may at any time hereafter within the period of this option, sell and convey the above-described property for the sum of thirty thousand dollars, and out of the proceeds arising therefrom, retain and pay to herself all sums of money then due her as is hereinbefore provided shall be paid to her in case the foregoing option should be exercised, the balance of said sum to be turned over to said L. F. Grover and Elizabeth Grover, their heirs, executors, administrators or assigns. In case this sale should be made during the period of the foregoing option, said option is to immediately terminate thereupon. In witness whereof, the parties to this agreement have hereunto set their hands and seals to this instrument executed in duplicate, the day and year first above written.

Rachel L. Hawthorne.    [Seal.]<br>
———————————    [Seal.]"

Whitney L. Boise, an attorney-at-law and witness for plaintiffs, testified, in substance, that he took charge of the Hawthorne Estate about May, 1898, and incorporated the same in order to better manage the affairs and obtain credit. He described quite fully many of the transactions referred to herein. He stated that the mortgages on the Grover-Hawthorne property amounted to nearly $40,000;

that the arrangement with the mortgagee was to pay $1,000 a month for a certain number of months, together with the interest, and after the mortgage was reduced to a certain sum, then to pay the interest only; that there was to be an extension of time; that Grover was to convey to Mrs. Hawthorne his undivided half of the land as security for one-half of the money already advanced, which was about $5,000, and for the money to be paid and advanced thereafter; and that Grover was to have three years to pay off Mrs. Hawthorne.

Mrs. W. L. Boise, daughter of Mrs. Hawthorne, and wife of Whitney Boise, testified in regard to the deed, to the following effect:

"We often talked, as I say, in the family, that he (Grover) had what would be left of the property; it was to come to him. I remember asking this, if Mr. Grover wasn't able to pay us what he owed us, if the property would come to us, and they said, 'Yes.' But I always understood when he could pay what he owed, what was left would go to him. He had his interest still in the property."

Mr. D. Keasey, a real estate dealer and witness for plaintiffs, testified, in effect, that he had a conversation with Mrs. Hawthorne when he was attempting to purchase the property; that he stated to her, after talking to Gov. Grover, that the latter claimed that the deed she held was a trust deed, and that he still owned an interest in the property; that Mrs. Hawthorne said that she did not know what obligations they were under to Gov. Grover, legally, but morally they would like to help him.

Mr. F. V. Holman offered his testimony for plaintiffs, to the effect that he was attorney for the Governor; that in 1908 he talked with Mr. Collins, husband of one of Mrs. Hawthorne's daughters, and Mr. Black, accountant, who was working for the corporation at the office of the Hawthorne Estate, desiring to get the property of Grover

in severalty, and to have him and his wife give a mortgage; that Black said that it would take some time to get up an account of what Grover owed the Hawthornes, but that he would get up such a statement; that at another time Mr. Collins informed him that they were making up such an account; that he discussed with them the question of having a resurvey of the tract in order to correct the plat on file; and that by the arrangements Gov. Grover should pay one-half of the costs of this resurvey, and the Hawthornes the other half.

Mrs. Elizabeth Grover, one of the plaintiffs, testified, in part, that after the deed in question was recorded she had a conversation with Mrs. Hawthorne and asked her for an accounting, which Mrs. Hawthorne promised, but said, "You know our affairs are all in confusion, and it will take a long time." Mrs. Grover further said that she used to telephone Mrs. Hawthorne and tell her how anxious they were to sell some of the property, and how she wished that she (Mrs. Hawthorne) would get Mr. McQuinn, the engineer, to hurry up; that Mrs. Hawthorne said:

"Well, you know Mr. McQuinn is a poor man,    *    * and has to have his money."

Further testimony by Mrs. Grover showed that there had never been any accounting or statement between plaintiffs and Mrs. Hawthorne or the Hawthorne Estate.

J. F. Watson, banker, testified for plaintiffs, to the effect that, about the time the corporation was organized, he talked with Mrs. Hawthorne, Mrs. Boise, and Mrs. Collins, the directors of the Hawthorne Estate, and arranged to make a loan of $30,000, and to take, as security, the stock of the corporation which was fixed at $300,000; that the stock, book, and seal of the corporation were to be left at the bank, and the business was to be done by Mr. Boise; that the same was done by Mr. Boise

until 1907, when they closed their account with the bank; that he asked who was to manage the business; and that Mrs. Hawthorne stated that Mr. Boise was to be the manager. It is further shown that in 1907 there was some estrangement between Mrs. Hawthorne and W. L. Boise, and that the books and papers of the corporation were transferred from the latter to Mr. George Black, a public accountant.

Mr. George Black, witness for defendants, testified to the purport that he and the Hawthorne Estate kept offices in the same rooms; that after 1907 he had charge of the papers and account books of the latter; that at the time of the conversation with Mr. Holman he did not refer to the matter of an accounting. On cross-examination this witness testified, in answer to the following questions:

Q. "Now, when you took those papers, from Mr. Boise's possession, you knew, did you not, or soon after you had possession of the papers, you knew, did you not, there was some money due the Hawthorne Estate from the Grovers?"

A. "No."

Q. "You heard it discussed?"

A. "Oh, I have heard it discussed, yes."

Q. "You have heard it discussed by some of the members of this corporation?"

A. "Oh, yes indeed."

Q. "Of the Hawthorne Estate?"

A. "Oh, yes indeed."

It is further shown that the original note and mortgage of the Hawthornes, Grovers, and Kineths to the German Savings & Loan Society, dated the 19th of September, 1896, were indorsed and assigned over to the Hawthorne Estate, April 21, 1908. It is also shown that there was no regular account kept by the Hawthorne Estate or Mrs. Hawthorne with either of the Grovers.

Mrs. Rachel L. Hawthorne testified, in substance, that about the time the German Savings & Loan Society mort-

gage was released as to the north part of the tract, the city was about to buy a portion of their land, but that they would not take it until the title was cleared, so Mr. Boise brought this deed in exchange for clearing up some of those titles; that there was something said about her taking the land in trust; that she would not have it so; that she said that she must have an absolute deed and nothing but a deed; that she was to lift the Grovers' mortgage, and assume the German Savings & Loan Society mortgage, and pay the Grovers $100 per month for fifty months; that there was an understanding reached between her and Mr. Boise about Mr. Grover buying back the property; that, as she remembered it, he was to have an option for three years to buy it back; that she did not remember of agreeing that the deed should not be recorded; that the matter was left largely to her lawyer; and that she did not extend the time of the option. On cross-examination Mrs. Hawthorne testified that Mr. Boise acted as attorney on behalf of the Hawthorne Estate and on her behalf, from 1898 until 1907; that Mr. Boise explained to her that these things had to be done in order to give clear title to the city; that Mr. Grover always liked to hold the part permanently that he had; and that he was very anxious to retain the ground that he was going to turn over to her by some paper. Mrs. Hawthorne said:

"As I got the first impression, it was not an absolute deed by which I would be done with the whole affair when it was paid for."

And further:

"I told him (Mr. Boise) I would not have anything but an absolute deed, for I wanted to get done with that property, and have it either one way or the other settled and it must be absolute."

She stated that on March 27, 1900, Mr. Boise brought her the deed and said it was all right. Mrs. Hawthorne

further testified that she did not remember telling Mrs. Grover that she would give her an extension of time to pay; that Mrs. Grover told her that they were in great distress, and wanted to know if they could let her have the money longer, and Mrs. Hawthorne said she did not think she could; that they (the Hawthornes) were borrowing money themselves; that she allowed the $100 a month to go on for a short time; that later they requested an increase of $150; that Mrs. Grover pleaded poverty and said that she could secure her on other land; that she asked Mr. Boise if they could stand it to have another fifty dollars a month, and he said they could; that they let the Grovers have the extra fifty dollars, with the understanding that, as Mrs. Grover said they had land to sell, they could return the obligation when they had sold the same; but that they (the Hawthornes) had no other security. It is further shown that Mrs. Hawthorne was the president of the Hawthorne Estate; that her two daughters, Mrs. Boise and Mrs. Collins were the directors and at different times acted as secretary and treasurer; that they were the only directors since the organization of the corporation. The testimony is voluminous, and we refer to only a portion thereof.

REVERSED : REHEARING DENIED.

For appellants there was a brief over the names of Messrs. Manning & White, Mr. Edward S. J. McAllister and Mr. Robert E. Hitch, with oral arguments by Mr. Samuel White and Mr. McAllister.

For respondents there was a brief over the names of Messrs. Snow & McCamant, Messrs. Dolph, Mallory, Simon & Gearin, Mr. Samuel T. Richardson and Mr. George B. Guthrie, with oral arguments by Mr. Zera Snow, Mr. Cyrus A. Dolph and Mr. Richardson.

MR. JUSTICE BEAN delivered the opinion of the court.

At the time of the trial of this cause, there was a stipulation of the parties made providing that the matter

of accounting should be postponed until the court should
determine the character of the instrument in question.
Therefore the statement of the money matters between
plaintiffs and defendants will not be made with accuracy,
as the exact status is not shown by the evidence.   A brief
history of the transactions leading up to and bearing
upon the points involved is as follows: In May, 1887,
plaintiffs became the owners of an undivided one-half
interest in the south half of the north half of the west
half of the donation land claim of Thomas and Minerva,
Carter.   In August, 1887, defendant, Rachel Hawthorne,
acquired a one-fourth interest in the property, and John
and Jane Kineth owned the other one-fourth interest.
The land is known as the "West End Tract."   In 1892,
the property was mortgaged by all the owners to the
German Savings & Loan Society for the sum of $30,000.
This mortgage was renewed in 1896 and increased to
$34,785, with interest at 6½ per cent. per annum.   In
1898, the mortgage being due, the German Savings &
Loan Society demanded payment thereof.   At that time,
by reason of a stringency in the money market, there was
no sale for the land, and the plaintiffs were financially
embarrassed.   Mr. L. F. Grover was in poor health and
unable to pursue his vocation as a lawyer.   It was
arranged for Mrs. Rachel Hawthorne to pay the accrued
and current interest and to make some monthly payments
of $1,000 each on the principal of the mortgage debt in
order for the Loan Society to allow the monthtage to run
longer.   Mr. Grover promised, if Mrs. Hawthorne should
accomplish that, to procure a deed to the latter, of the
interest in the land of John and Jane Kineth.   This deed
was afterwards obtained.   About this time a suit was
instituted by Grover and Mrs. Hawthorne against the
city of Portland for damages; the city having theretofore
acquired certain land from the West End Tract for the
purpose of building reservoirs.   In 1900, a settlement of

the suit was effected, whereby the city purchased 36.33 acres of the north half of the land covered by the Loan Society mortgage, for the sum of $29,743.40. In order to effect this, a payment of $12,785 was made on the Loan Society mortgage out of the funds received from the city. Other claims were paid, and the north half of the property was released from all liens. Mrs. Hawthorne made some five or six $1,000 payments on the principal of the Loan Society mortgage and reduced the same to about $22,000. At the time of the execution of the deed in question in this suit, L. F. Grover was indebted to Mrs. Hawthorne for his one-half of the above-mentioned payments and for other money expended for the protection of the property and for improvements thereon. Mr. Grover, and Dr. Hawthorne, deceased, husband of Mrs. Rachel Hawthorne, were for many years personal and political friends, and it is claimed on behalf of plaintiffs that the Hawthorne Estate fortune was laid and conserved through the friendship, advice, and financial assistance of Mr. Grover.

There is but little diversity in the opinion of counsel regarding the law applicable to this case. The main question presented by the record is: Was the deed intended to be in effect a mortgage? Counsel for plaintiffs maintain the affirmative of this question, while counsel for defendants support the contrary view.

1. It is the settled law of this State that a deed absolute upon its face may be shown by parol evidence to have been intended as a mortgage to secure the payment of money: *Stephens* v. *Allen,* 11 Or. 188 (3 Pac. 168) ; *Swegle* v. *Belle,* 20 Or. 323 (25 Pac. 633) ; *Kramer* v. *Wilson,* 49 Or. 333 (90 Pac. 183) ; *Elliott* v. *Bozorth,* 52 Or. 391 (97 Pac. 632) ; *Bickel* v. *Wessinger,* 58 Or. 98 (113 Pac. 34) ; *Miles* v. *Hemenway,* 59 Or. 318 (117 Pac. 273).

2. In order to determine whether or not such a deed

is in effect a mortgage, the test is this: Was a debt created, or was a per-existing debt continued, and was the instrument designed as security? If the pre-existing debt was not extinguished, or if a new debt was intended to be created and the conveyance was given as security, then it should be declared to be in effect a mortgage. *Bickel* v. *Wessinger*, 58 Or. 98 (113 Pac. 34); *Miles* v. *Hemenway*, 59 Or. 318 (117 Pac. 273); *Kinney* v. *Smith*, 58 Or. 158 (113 Pac. 854).

3. It appears that, at the time of the execution of the deed, there was no settlement or accounting between Grover and Mrs. Hawthorne, and none of the evidences of the Grovers' indebtedness were canceled or surrendered to them; and it appears that Mrs. Hawthorne did not assume the German Savings & Loan Society mortgage or release the plaintiffs from their liability thereon, or from any of the other similar indebtedness, but the mortgage was afterwards assigned to the Hawthorne Estate. It seems to have been uncertain at that time whether or not Mrs. Hawthorne could carry the amount of the indebtedness and save anything out of the property. The matter was allowed to stand in the same condition as regards the liability of the Grovers. Mrs. Hawthorne advanced $100 per month for th period of 50 months, which expired May, 1904, and thereafter the payments were continued until the 1st of December, 1906, when the same were increased to $150 per month. These latter payments were continued until October, 1907.

Mr. Grover did not sign the so-called option contract set forth above, for the reason that some of the conditions were thought to be unfavorable to him; and, being signed by Mrs. Hawthorne, it may fairly be treated as an admission on her part of the facts therein stated. This instrument shows that the affairs between Mrs. Hawthorne and the Grovers were in an unsettled condition, as the amount of the consideration was left a

blank. The concluding paragraph of this document, conferring upon Mrs. Hawthorne the right to sell the property for $30,000, and out of the proceeds retain and pay to herself "all sums of money *then due her,* * * the balance of said sum to be turned over to La Fayette Grover and Elizabeth Grover," clearly indicates that the debt due Mrs. Hawthorne from Grover was not extinguished at the time of the execution of the deed. The attempt to thereby obtain authority from Mr. Grover for her to sell the property is not consistent with the claim that she had complete title to and control of the property, or that Grover had surrendered the same to her. Taking into consideration the written instruments and all the evidence showing the circumstances of the transaction, the intention of the parties at the time, their conduct and declaration respecting the arrangement, and their friendly relation, we think that the deed in question was given as security, and was intended to be, and is in effect, a mortgage.

It would seem that Mrs. Hawthorne desired to obtain an absolute deed of the land; but the evidence shows that her main object was to secure the payment of the amount due her, and what she was compelled to pay in order to protect her interest in the property. Mr. Grover's financial ability did not permit him to pay his share of the mortgages and other claims, and their creditors were pressing for at least partial satisfaction. Mrs. Hawthorne, in the kindness of her heart, desired to make some advances to meet the necessities of the Grovers. She was then owing money, and the end that she evidently had in view was to collect debts due her, and not to acquire title to more land. At any time after the deed was executed, until 1907, it would no doubt have been satisfactory to Mrs. Hawthorne to have had the property sold, to have received the money due her, and to have paid the balance to the Grovers. In short, the

whole arrangement savors of the conveyance being intended as security, and in effect a mortgage.

4. It is a maxim of the law that, "Once a mortgage, always a mortgage," and the right of the mortgagors (in this instance, the Grovers) can only be extinguished by regular foreclosure and sale. *Reily* v. *Cullen,* 159 Mo. 322 (60 S. W. 126). This maxim is applicable, as it appears from the writing referred to, and the other evidence, that Mrs. Hawthorne intended that the conveyance should operate as a mortgage in case Grover should pay her the several sums of money due her, or, if he should fail to do so, then that it should be an absolute deed. Under these conditions, an extinguishment of the Grovers' right of equity of redemption was necessitated by operation of law.

5. The equitable rights of the mortgagor are so fully recognized and protected that he is relieved from his own express agreement that, upon failure to pay the debt as stipulated, his estate shall be forfeited; such agreement being held utterly void in equity. It matters not how strongly the parties may express their agreement that there shall be no redemption; the intent being contrary to the rules of equity, it cannot be' carried into effect. 2 Jones, Mort. (6 ed.) 1039; *Jackson* v. *Lynch,* 129 Ill. 72 (21 N. E. 580: 22 N. E. 246) ; *Keithley* v. *Wood,* 151 Ill. 566 (38 N. E. 149: 42 Am. St. Rep. 265) ; *Bradbury* v. *Davenport,* 114 Cal. 593 (46 Pac. 1062: 55 Am. St. Rep. 92, and notes).

Whatever be the form of the instrument, if intended as security for the payment of money, it is a mortgage, and the right of redemption attaches to it. If the deed in question had contained a condition that it should be absolute and without redemption if the money due from Grover were not paid at a specified time; there would be a right of redemption (2 Jones, Mort. [6 ed.] 1039), and the several declarations in the documents signed by Mrs.

Hawthorne, purporting that the conveyance was in effect an absolute deed and not intended as a mortgage, would not have any more force than if such declarations were embodied in the deed itself, even though the option contract had been completed and executed by Grover. Any agreement which would be objectionable in case of a formal mortgage is equally objectionable where a deed in form is in effect a mortgage. 2 Jones, Mortgages (6 ed.) 1043.

6. It will be seen by the cases cited that, whether the contract is embraced in one instrument or more, that would not change the nature of the transaction. The fact that the agreement was evidenced by more than one written memorial would not change the rule as to the admission of parol evidence, nor is such evidence admitted for the purpose of contradicting the writings, but rather for the purpose of establishing the intent of the parties, to determine an equity superior to the terms thereof, and to overcome the presumption that the deed is what it purports upon its face to be.

7. Objections were made to the evidence of the negotiations between Grover and W. L. Boise, on the ground that the latter exceeded his authority as agent for the Hawthornes. It appears that most of the transactions leading up to the execution of the deed were made on the part of the Hawthornes through their attorney, Mr. Boise. In order for Mrs. Hawthorne to ratify and obtain the benefit of part of the transactions, she must ratify and assume the burdens of the whole thereof. She cannot ratify the same in part and repudiate in part. *McLeod* v. *Despain,* 49 Or. 536, 552 (90 Pac. 492: 92 Pac. 1088: 19 L. R. A. [N. S.] 276: 124 Am. St. Rep. 1066), and cases there cited. Mrs. Hawthorne accepted the deed, paid the monthly installments, and made other payments pursuant to the agreement she perfected with Grover through her attorney, Mr. Boise.

8. The legal rule is that the principal is not only liable for the acts of the agent in the *main* transactions, but for his acts, representations, declarations, or admissions, within the *scope* of the authority confided to him respecting the subject-matter, if done or made at the same time and constituting a part of the *res gestae. Kickland* v. *Woodenware Co.,* 68 Wis. 34, 40 (31 N. W. 471: 60 Am. Rep. 831, citing Story on Agency, § 134).

At the time of the conveyance of the land by Mrs. Hawthorne to the corporation, she and her daughters were the officers of the Hawthorne Estate, and they had knowledge of all the transactions with plaintiffs. Therefore this transfer does not affect this case.

The motion of defendants to dismiss this appeal is determined by the opinion this day rendered by this court in the case of Grover *et al.,* Respondents, *v.* Hawthorne *et al.,* Appellants, and therefore such motion should be denied.

From the foregoing considerations it follows that the decree of the lower court must be reversed, and the cause remanded, with directions to the circuit court to enter a decree declaring the deed to be in effect a mortgage, to ascertain, by an accounting, the amount due defendants from plaintiffs, and for such proceedings as may be necessary and proper, not inconsistent with this opinion.

REVERSED : REHEARING DENIED.