SUSAN H. MCPHERSON, in equity, *vs.* JARVIS HAYWARD, and another.

Aroostook.    Opinion February 19, 1889.

*Equitable mortgage.    Foreclosure.    Redemption.    Laches.    Parties.*

81  329
86  418
81  329
98  254
98  255
81  329
100  563

Where one has a contract for a conveyance of land to him, and procures another to complete the payments for him, and such other person does so, and takes the deed in his own name for his advances, the transaction constitutes a mortgage between the parties.

The relation of mortgagor and mortgagee, once established, continues until the mortgage is redeemed or discharged, or the right of redemption is legally barred.

The right to redeem may be barred by the exclusive and adverse possession of the land by the mortgagee for twenty years;—but such possession must be unequivocally adverse to the mortgagor, or those claiming under him.

Where the mortgagee's possession was under an arrangement with the mortgagor, for him to hold possession of the property, and manage it until he should satisfy his claim from the proceeds, such possession is not adverse until the mortgagee's claim is satisfied, or he asserts an absolute title in himself, and gives distinct notice of it to the mortgagor.

The question of laches does not arise under a bill to redeem a mortgage. The duration of the mortgagor's right to redeem is clearly defined by law, and cannot be abridged or enlarged by the court.

One part owner, of an equity of redemption, can maintain a bill to redeem, by joining the other part owners as defendants.

ON REPORT.    Bill in equity, to redeem a mortgage, heard on bill and supplemental bill, answers, and proofs.

The bill, as originally framed, was to redeem a statute mortgage of certain lands in Aroostook county, given by Nathaniel Blake to G. K. Jewett, August 31, 1861. After an answer to this bill was filed, it was discovered that the title of the mortgagor, Blake, was by a conditional deed of the land from the state, which, it was alleged, became forfeited for non-payment; and a second answer was filed denying there was any right of redemption, it being claimed that the title to the land had vested in G. K. and E. D. Jewett October 18, 1862 under a release to them by the state.

It became a material question, as fully appears in the opinion, whether or not, the plaintiff was entitled to redeem the property,

upon the ground that the transactions between Blake and Jewetts, under whom the plaintiff and defendants claim, constituted an equitable mortgage.

*Powers and Powers, L. C. Stearns*, with them, for plaintiff.

Land agent's deed to Blake vested in him an estate upon condition subsequent. *Underhill* v. *Saratoga R. R.*, 20 Barb. 455; *Hayden* v. *Stoughton*, 5 Pick. 528; *Stone* v. *Ellis*, 9 Cush. 95; *Spofford* v. *True*, 33 Maine, 283; *Bangor* v. *Warren*, 34 Id. 324;

Resolve of 1859 was a ratification of the deed, and changed the condition, if precedent, into one subsequent. It confirmed the original grant. *Thompson* v. *Bright*, 1 Cush. 420. Estate has not been revested in the state;—there was no re-entry. 1 Prest. Est. 48; Co. Lit. 214; *Willard* v. *Henry*, 2 N. H. 120; *King's Chapel* v. *Pelham*, 9 Mass. 501; *Tallman* v. *Snow*, 35 Maine, 342; *Hooper* v. *Cummings*, 45 Id. 359; *Webster* v. *Cooper*, 14 How. 488, 501. No inquest of office, as required by R. S., c. 93, recognizing the common law rule to same effect. *Wilbur* v. *Tobey*, 16 Pick. 177; *Thompson* v. *Bright*, *supra*. That statute applies only to conditions subsequent. Resolve of 1859 cannot obviate the necessity of entry or inquest; cannot defeat grantee's seizin and reseize the state. Acting retrospectively, it cannot effect Blake's rights under the deed. *Coffin* v. *Rich*, 45 Maine, 507; *Read* v. *Frankfort Bank*, 23 Id. 318; *Lewis* v. *Webb*, 3 Greenl. 326. They were beyond legislative control. *Stearns* v. *Godfrey*, 16 Maine, 158.

State could not convey without entry, possession recovered, or office found. *Thompson* v. *Bright*, *supra*.

Deed to Jewetts conveyed no title from state under the resolve if condition is precedent. Land agent could convey only the interest forfeited to a "part owner." G. K. Jewett had only the right to make payment to the state for Blake, and under the security of the Blake mortgage. He cannot deny his mortgagor's title. The release from the state goes to strengthen mortgagor's title. 2 Wash. Real Prop. 159; *Farmer's Bank* v. *Brownson*, 14 Mich. 369. Mortgagee became trustee of mortgagor. 2 Wash. Real Prop. 116. G. K. Jewett trustee of E. D. Jewett & Co. who rendered accounts in respect of the land from 1861, to 1875.

Mortgage of 1861, secures the whole debt. Its redemption destroys the basis of any other title resting on the release as an assignment of the mortgage.

Defendant stands in no better position than original mortgagee. Any assignment, by the release, would be discharged by operation of law. *Hatch* v. *Palmer*, 58 Maine, 271; *McCabe* v. *Swap*, 14 Allen, 188; *Carlton* v. *Jackson*, 121 Mass. 592. Equity will assume that the charge of the state is extinguished. *Forbes* v. *Moffatt*, 18 Ves. 385; *James* v. *Morey*, 6 Johns. Ch. 417. Jewett & Co. charged Blake in account with $1090.04, the consideration paid for deed from state, and made no claim otherwise than as mortgagees. Estopped from setting up any other title than mortgagees. *Hatch* v. *Kimball*, *supra*. That was the only title that passed to defendant Hayward. *Dugan* v. *Nichols*, 125 Mass. 43; *Green* v. *Holmes*, Id. 46, note; *Goss* v. *Coffin*, 66 Maine, 432; *Coe* v. *Persons Unknown*, 43 Id. 432; *Walker* v. *Lincoln*, 45 Id. 67. Assignee in bankruptcy conveyed only the right, title and interest of the bankrupts. Smith's L. C., vol. 2, 627. Defendant, Hayward, knew the arrangements between Blake and Jewett & Co. Equity to redeem not barred. White & Tudor's L. C. in Eq., vol. 2, part 2, p. 1984. Defendant estopped to deny right to redeem, by his answer. Smith's L. C., vol. 2, 627, 671; *Huntington* v. *Am. Bank*, 6 Pick. 340.

*A. W. Paine, Madigan and Madigan*, with him, for defendant, Hayward.

No title vested in Blake by deed from the state. *Stratton* v. *Cole*, 78 Maine, 553. Defendant does not hold premises in trust. Nature and grounds of trust, must be stated in bill. *Rowell* v. *Freese*, 23 Maine, 182. Trust based on Blake's ownership not well founded in fact. No fraud is charged, hence plaintiff must prove a use of Blake's money, or agreement to make a purchase for him. Jewetts paid with their own money. No trust: *Nortil* v. *Schead*, 29 N. J. Ch., 458; Hill's Trusts, *94, *96, *97, note; Perry's Trusts, § 133; *Pinnock* v. *Clough*, 16 Vt. 507; *Philbrook* v. *Delano*, 29 Maine, 410, 413, and cases cited; *Kelly* v. *Jenness*, 50 Id. 455; *Kendall* v. *Mann*, 11 Allen, 15; *Davis* v. *Wetherbee*,

Id. 19; *Conner* v. *Lewis*, 16 Maine, 268, 274; *Bottsford* v. *Burr*, 2 Johns. Ch. 405; *Steere* v. *Steere*, 5 Id. 1.

Contract to purchase must be in writing. *Walker* v. *Hill*, 21 N. J. Eq. 191, 202; *Wakeman* v. *Dodd*, 27 Id. 564; *Duffy* v. *Masterson*, 44·N. Y. 557; *Baker* v. *Vining*, 30 Maine, 121, 127.

Hayward, innocent purchaser for value. He had the right to rely on the record. Burden on plaintiff to prove notice, &c., of trust. Notice: Perry's Trusts, § 231, *et seq*. *Frost* v. *Belmont*, 6 Allen, 152, 162; *Duffy* v. *Masterson, supra.*

Blake's rights lost by laches. Hill's Trustees, \*95; Robert's Fraud, 99; *Smith* v. *Clay*, 3 Bro. C. C. 639; *Wagner* v. *Baird*, 7 How. 234; *Michoud* v. *Girod*, 4 How. 503, 561; *Gould* v. *Gould*, 3 Story, 516; *Hendrickson* v. *Hendrickson*, 42 N. J. Eq. 657; *Bowman* v. *Wathen*, 1 How. 189; *Brinkerhoff* v. *Brinker-hoff*, 23 N. J. Eq. 477; *Merritt* v. *Brown*, 21 Id. 401; *Farnam* v. *Brooks*, 9 Pick. 212; *Plymouth* v. *Russell Mills*, 7 Allen, 438, 445; *Kline* v. *Vogel*, 90 Mo. 239; *Laughlin* v. *Mitchell*, 121 U. S. 411, 420, 421; *McGiveney* v. *McGiveney*, 142 Mass. 156; *Briggs* v. *Hodgdon*, 78 Maine, 514; *Fox* v. *Mackreth*, 1 L. C. in Eq. \*92 and notes. Perry's Trusts, § 239, *et seq.*

Equity of redemption barred. Cases last cited, and *Slicer* v. *Bank*, 16 How. 571; *Fay* v. *Valentine*, 12 Pick. 40, 45; *Platt* v. *Squire*, 12 Met. 494; *Ayers* v. *Waite*, 10 Cush. 72, 75; *Chapman* v. *Pingree*, 67 Maine, 198; *Southard* v. *Sutton*, 68 Id. 575, 578.

Plaintiff's co-tenant should have been joined as party plaintiff. Story's Eq. Pl., §§ 182, 287, 201; 1 Daniel Ch. 260; *Stone* .v. *Locke*, 46 Maine, 445, 449; *Beals* v. *Cobb*, 51 Id. 348; *Chamber-lain* v. *Lancey*, 60 Id. 230; *Southard* v. *Sutton*, 68 Id. 575.

EMERY, J. The material facts found by the court are these:

Nathaniel Blake, January 4, 1853, bargained with the state land agent for the purchase of a large tract of state land, and for the purchase money gave three notes of that date for $1,186.57 each, and maturing in one, two and three years respectively: He at the same time, received from the land agent the usual deed, to himself and heirs and assigns, conditioned that it should be void, if the said notes were not paid at their maturity. Blake himself paid the first note, and also part of the second note.

Part of the purchase money remained unpaid, when the legislature by resolve approved March 11, 1859 declared that one-third of the sum then due should be paid by Sept. 1, 1860, one-third by Sept. 1, 1861, and the last third by Sept. 1, 1862, or the land should be held forfeited to the state. Blake then arranged with E. D. Jewett & Co., to pay the balance due on his notes and take security therefor upon the land. At the request of the Jewetts, Blake on Sept. 10th, 1861, executed and delivered to them a mortgage deed of the land to secure them for the payments they had made, and for the additional payments they should thereafter make on his land notes. This deed was recorded Sept. 17, 1861. The Jewetts completed the payments for the land under this arrangement, and then took a deed of the land from the state to themselves dated Oct. 18, 1862. This deed was taken solely as security for their payments made on Blake's account for the same land. The Jewetts under the same arrangement assumed the care of the land, and kept a regular account with it, charging what they had paid and interest, &c., and crediting proceeds, &c. The land was designated upon their books as the "Blake purchase." They made statements of this account to Blake yearly for several years,—till 1874 at least. The understanding was that the Jewetts were to re-imburse themselves out of the land for all expenditures and services in that behalf, and then convey the land to Blake.

In 1875, the Jewetts went into bankruptcy, and their title to this land, with other lands, passed to their assignee under the usual court deed March 14, 1876. The assignee transferred this title, with other lands to the respondent Hayward, April 23, 1879. Hayward knew of the mortgage deed and of the arrangement between Blake and the Jewetts, about this land.

Blake stated verbally in 1879, or 1880, that he saw little chance of being able to redeem the land from the Jewetts, and had given up the hope of redeeming. He declined however to execute a quitclaim deed when asked to do so by the Jewetts. It does not appear to the court, that he made the statement in answer to any inquiry from a would be purchaser, or that the land was purchased from the assignee on the strength of Blake's statement.

Blake died in 1880. Sarah H. McPherson, the complainant, now owns 35–36ths of such interest in this land as he left, and one Harriet Carr owns the other 36th. Mrs. McPherson filed this bill February, 1886, against Hayward, making Mrs. Carr a co-respondent. The bill prays for an account, and for a decree of redemption and conveyance of the land. The usual account had been demanded and refused.

The question of law is mainly, whether or not the papers and transactions above recited constituted a mortgage of the land from Blake to the Jewetts. If so, the rights of the parties would be those of mortgagor and mortgagee, and hence easily determined, by familiar rules.

If at the time of his arrangement with the Jewetts and his deed to them, Blake had the legal title to the land, the transaction clearly constituted a mortgage, through which the Jewetts acquired only a mortgagee's interest, leaving in Blake the full interest of a mortgagor. We do not think, though, that a legal title in Blake was essential to a mortgage relation between him and the Jewetts. Blake under his contract with the state, evidenced by the notes and the deed, undoubtedly acquired at least an equitable interest or estate in the land itself. In equity he would be regarded as the real owner, and the state as simply reserving a lien for the purchase money. He had a good title against all the world except the state. *Stratton* v. *Cole*, 78 Maine, 553. This interest of Blake, was clearly subject to sale, or assignment, and also subject to sale or assignment for security or in mortgage. *Jones on Mort.* 136. Blake could mortgage as well as sell his interest.

If the Jewetts acquired the fee directly from Blake, they were of course simply mortgagees, and could make their title absolute only in the way provided by law. They however acquired the beneficial ownership from Blake, and the legal ownership from the state. They acquired both solely for security for their advances to Blake for the purchase of the land. They received both titles not in trust, but as security for what Blake owed them. They were creditors, not trustees. Such a transaction constitutes a mortgage, however indirectly or circuitous the transfer, and

whatever the form of the instruments. The criterion always is,—whether the transaction was intended to simply secure one party for claims against the other. The most formal absolute deed of unconditional warranty, will not create a different relation, if the deed was clearly given for security only. *Reed* v. *Reed*, 75 Maine, 264.

If Blake had received the money into his own hands from the Jewetts,—had himself then paid it to the state,—had received from the state a conveyance of the fee to himself,—and had then conveyed it by absolute deed to the Jewetts as security for their loan to him, the transaction unquestionably would have created the mortgage relation between the parties. If instead of two deeds, as above supposed (first from the state to him, and, second, from him to the Jewetts,) Blake on paying the money had procured the state deed to be made direct to the Jewetts, for the same purpose of security, the mortgage relation would not have been changed. If instead of receiving and paying the money in person he arranged for the Jewetts to pay it directly to the state for him, and they took the state deed as security for their advances, it is difficult to see how that economy of method and detail would change the relations between them.

Where one has a contract for a conveyance of land to him, and procures another to complete the payments for him, and such other person does so, and takes the deed in his own name as security for his advances, the transaction constitutes a mortgage of the land between the parties. *Stoddard* v. *Whiting*, 46 N. Y. 627; *Carr* v. *Carr*, 52 N. Y. 251; *Honsor* v. *Lamont*, 55 Pa. St. 311; *Smith* v. *Cremer*, 71 Ill. 185.

We think the facts found in this case, establish the relation of mortgagor and mortgagee between Blake and the Jewetts as to this land.

This relation, once established, continues until the mortgage is redeemed and discharged, or the right of redemption is legally barred. No other subsequent change in the circumstances or conditions will change it. "Once a mortgage always a mortgage." *Reed* v. *Reed*, 75 Maine, 264. The death of Blake passed his right of redemption to his heirs. The bankruptcy of the Jewetts

transferred their right of security to their assignee, and on to the respondent Hayward. The relation between the complainant representing the heirs, and this respondent Hayward is still the mortgage relation, unless there has been a redemption, or the right to redeem has been foreclosed.

There has been no redemption, and the right of redemption, admittedly, has not been barred by any statute process of foreclosure. The only other mode of effectually barring that right, is for the mortgagee to take and keep possession of the land for twenty years, to the exclusion of the mortgagor, and in denial of his right. The possession of the mortgagee must be unequivocally adverse to the mortgagor, or to those claiming under him. *Jones on Mort.* 1144. Waiving the question whether the mortgagees' possession in this case was sufficient in other respects to raise a bar, it clearly was not antagonistic to the mortgagor until 1874, when they ceased rendering to him statements of the accounts of the land. Up to that time the mortgagor's rights in the land were recognized. The mortgagees' possession was under an arrangement with the mortgagor, for them to hold possession of the property and manage it until they should satisfy their claims from the proceeds. Such a possession does not become adverse until the mortgagees' claim is satisfied, or he asserts an absolute title in himself and gives distinct notice of it to the mortgagor. *Jones on Mort.* 1152; *Quint* v. *Little*, 4 Maine, 495.

The adverse possession in this case did not begin till 1874, if so early, and the right to redeem would not be barred till 1894.

No question of laches arises under a bill to redeem a mortgage. The duration of the mortgagor's right to redeem is clearly defined by law, and one the court cannot abridge, or enlarge by a single day. The right continues indefinitely, until barred by some process of foreclosure, or by twenty years' adverse possession of the land by the mortgagee.

It is immaterial whether or not the assignee in bankruptcy had notice of Blake's interest. The assignee was not a purchaser for value, nor an attaching creditor. He acquired no beneficial interest in the land, but simply succeeded to the Jewetts' title, by operation of law. He acquired no new right against Blake. Hay-

ward obtained no protection through the assignee's want of notice, and he himself had notice.

The non-joinder of Mrs. Carr as complainant is no objection to the maintenance of the bill. Mrs. McPherson, the sole complainant, must, of course, pay the whole amount due, in order to obtain a conveyance, a release, for the mortgagee is entitled to payment in full. Mrs. Carr is made a respondent. If she moves for a decree fixing the amount she should contribute and for a conveyance of her share to her by the complainant after redemption, that motion can be considered. As it is, the complainant is entitled to a decree. *Jones on Mort.* 1063.

The decree should be that the bill be sustained as against Hayward,—that he be ordered to render an account as mortgagee in possession,—that the cause be sent to a master to determine the amount due to Hayward. Further decrees can be made on the coming in of the master's report.

*Bill sustained.*

PETERS, C. J., DANFORTH, LIBBEY, FOSTER and HASKELL, JJ., concurred.