Argued November 26, decided December 9, 1913, rehearing denied
January 6, 1914.

# CARO v. WOLLENBERG.*

(136 Pac. 866.)

**Mortgages—Rights of Parties—Possession by Mortgage—Nature of Possession.**

1. Under the maxim, "Once a mortgage, always a mortgage," where a mortgagee entered into possession under a deed which was in equity a mortgage, he held possession as mortgagee, and the relation of the parties was analogous to that of trustee and *cestui que trust.*

[As to maxim, "Once a mortgage always a mortgage," see note in 131· Am. St. Rep. 914.]

**Mortgages—Absolute Deed as Mortgage—Test.**

2. To determine whether a deed absolute on its face is in equity a mortgage, the test is whether a debt was created or continued for which the deed was designed as security.

**Limitation of Actions—Computation of Period—Existence of Trust.**

3. The statute of limitations, being an affirmative defense, begins to run in favor of a trustee, against the *cestui que trust,* only after the trustee repudiates the trust and asserts an adverse claim, and these facts are known to the *cestui que trust,* and then only where the *cestui que trust* is *sui juris,* and is not under the undue influence of the trustee, in which latter case the statute will begin to run only when such influence ceases.

[As to effect of lapse of time on right to have deed declared mortgage, see note in Ann. Cas. 1914B, 354.]

**Mortgages—Rights of Parties—Possession of Property.**

4. When a mortgagee obtains possession of the premises after condition broken, either by the consent of the mortgagor or otherwise, he has the right to retain such possession as against the mortgagor till the debt is paid.

**Mortgages—Rights of Parties—Limitations.**

5. The relation of mortgagor and mortgagee must in some way be terminated before either party in possession can interpose the statute of limitations as a defense against the other.

**Mortgages—Rights of Parties—Possession of Property.**

6. When by the terms of a mortgage, or under a subsequent agreement, the mortgagee is to hold possession till he shall satisfy his claim from the rents and profits, his possession does not become ad-

---

*On the question whether limitation runs against mortgagee in possession, see note in 34 L. R. A. (N. S.) 356. And upon the rights of a purchaser at void foreclosure sale as mortgagee in possession, see note in 40 L. R. A. (N. S.) 842.          REPORTER.

verse till his demand has been satisfied or he asserts an absolute title and gives distinct notice thereof to the mortgagor, and this rule applies in case of an absolute deed given as a mortgage.

### Limitation of Actions—Rights of Parties—Possession of Property by Mortgagee—Notice of Claim.

7.  When a mortgagee enters into possession under a void foreclosure, limitation does not run in favor of him or his grantees against a suit for redemption and accounting till actual notice to the mortgagee that they claim to hold in some other right adverse to the mortgage.

### Mortgages—Transfer to Mortgagee—Validity.

8.  Though there is no legal restraint on the mortgagor's selling the property to the mortgagee in satisfaction of his debt, the burden of proof is on the mortgagee to show that the sale of the mortgagor's equity was voluntarily made, that his conduct was in all things fair, and that he paid for the property what it was reasonably worth.

### Mortgages—Redemption—Nature of Right.

9.  Both at common law, and under Section 335, L. O. L., providing that a mortgage of real property shall not entitle the owner of the mortgage to recover possession of the property without a foreclosure and sale according to law, and Section 422, making the remedy by foreclosure exclusive, the right to redeem is favored by a court of equity, and will not be taken away except on strict compliance with the necessary steps.

> [As to right to redeem as incident of mortgage, see note in Ann. Cas. 1912D, 959.]

### Mortgages—Redemption—Suit to Redeem—Evidence.

10.  In a suit to have a deed declared a mortgage and to redeem, evidence *held* to show that the mortgagee went into possession under an agreement to collect the rents and apply them to the debt, and insufficient to sustain a defense of adverse possession by the mortgagee.

### Mortgages—Redemption—Suit to Redeem—Parties.

11.  The heirs of a deceased grantor, as well as the surviving grantor, should be made parties to a suit to declare the deed a mortgage and to redeem.

From Douglas: LAWRENCE T. HARRIS, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

This is a suit brought by Simon Caro against H. Wollenberg to have a deed absolute in form declared to be a mortgage, for an acounting, and to redeem upon any balance being found due. Defendant denies that the deed was intended as a mortgage, and claims that the same was an absolute conveyance; that in 1899

he entered into possession of the premises under said deed and ever since and for more than ten years has been in the adverse possession of the same, claiming to be the owner thereof. Upon the testimony taken by a referee to whom the case was referred, the Circuit Court found that the deed in question was intended as a mortgage, but that the defendant has had the adverse possession of the properties for a continuous period of more than ten years.

REVERSED: REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Cardwell & Watson,* with an oral argument by *Mr. William W. Cardwell.*

For respondent there was a brief, with oral arguments by *Mr. Oliver P. Coshow* and *Mr. Dexter Rice.*

MR. JUSTICE BEAN delivered the opinion of the court.

The facts out of which the controversy arose are as follows: On November 24, 1890, plaintiff, Simon Caro, and Isadore Caro, his brother, who were partners engaged in the mercantile business in Roseburg, Oregon, borrowed $12,000 from Samuel Marks and H. Wollenberg, for the purpose of constructing a store building on the lots involved, and executed their promissory note therefor with interest at the rate of 8 per cent per annum. This note was secured by a mortgage on the store property, which consisted of a two-story brick building with a storeroom occupied by Caro Bros. on the ground floor, and a hall upstairs, and a one-story building adjacent thereto divided into two storerooms which were rented. Later this note and mortgage were assigned to defendant H. Wollenberg. On June 1, 1892, Caro Bros. borrowed the sum of $4,500 from H. Wollenberg and executed their promis-

sory note bearing interest at 8 per cent per annum, payable monthly, and due January 1, 1896. This was secured by a second mortgage on the store property and a first mortgage on residence property occupied by plaintiff, Simon Caro, and owned by him and his brother. By the terms of the note, Caro Bros. agreed to pay the taxes and insurance on the property. On July 22, 1895, a few months before the notes became due, Simon Caro and his brother Isadore executed to the defendant a deed absolute in form, conveying to the latter the store and residence property. The plaintiff contends that the deed was given in lieu of the two mortgages, in order to avoid double taxation, to wit, the tax on the property, and the tax on the amount of the loan which plaintiff and Isadore Caro had obligated themselves to pay. The defendant claims and alleges that on July 22, 1895, he demanded the payment of the indebtedness, which Caro Bros. failed to make; that he notified them that he would proceed to foreclose his mortgage lien; that, for the purpose of avoiding additional expense and trouble of foreclosure, it was mutually agreed by him and Caro Bros. that, in consideration of the latter executing to him a warranty deed to the premises, thereby saving the costs and expenses of a foreclosure suit, he would extend the time for redemption on said mortgaged premises for a period of four years from that date; that it was mutually agreed that if Caro Bros. would pay him the full sum of $16,610, that being the amount of the two mortgages, with $110 interest added, with interest thereon at the rate of 8 per cent, together with all taxes assessed against the premises within four years from July 22, 1895, he would reconvey the premises to Caro Bros., and that they might occupy the same during said period, and collect the rents; that if they failed to pay the interest when due, or the en-

tire sum of principal, interest and taxes, within four years from the said date, then they should surrender the possession thereof to the defendant, and the contract executed to that effect should be void. Defendant claims that Caro Bros. failed to pay the principal sum and about $400 of the interest and taxes within the specified time; that after the expiration of the four years, to wit, July 22, 1899, Caro Bros. surrendered possession of the premises to defendant and released him from any and all claims and demands. Wollenberg states that the agreement or article of defeasance permitting Caro Bros. to redeem the property was placed in a bank in Roseburg, and that whenever they paid the money the same was to be destroyed; that after possession was taken by him he must have destroyed the agreement, as he is unable to find the same. The plaintiff testifies that he had no knowledge of any such agreement having been executed in writing. The two mortgages were canceled of record August 29, 1895. Defendant testifies that he surrendered the notes to Caro Bros. This is denied by the plaintiff, and the circumstances taken in connection with the fact that the mortgage was not canceled of record for more than a month after the deed of July 22, 1895, was executed, strongly indicate that nothing was done with the notes at the time of the execution of the deed, and that they were allowed to slumber for some time. Whatever disposition was made of these notes, they were simply evidence of the debt. Whether or not the agreement was expressed in writing, according to the testimony of Mr. Wollenberg, when the Caro Bros. asked for further time for payment, he gave them four years; that "it [the written agreement] contained that, if they paid me the amount what they was owing me, I agreed to give them back the property." This clearly shows that there was a

debt existing, and that the purpose of the deed was security therefor. Wollenberg further states that at the end of the four years he called for his money, and that Caro Bros. claimed that they were unable to pay, but were willing to give up the property, which they did. The plaintiff swears that the possession of the property was surrendered to defendant with the understanding that he would collect the rents and apply the same upon the mortgage. This is the pivotal question in this case. There is but little question but that the deed, absolute upon its face, was intended as a mortgage to secure the payment of the $16,610, interest, taxes, etc. The Circuit Court so found.

Wollenberg alleges that he entered into possession under that deed. It appears that Caro Bros. collected the rents and remained in possession of the premises until they contemplated leaving Roseburg to engage in business in Oakland, about 14 miles distant, since which time Wollenberg has collected the same. It appears that Wollenberg collected the rents for a month or two before Caro Bros. left for Oakland. The possession of the storeroom occupied by them was not surrendered to defendant until about October 9, 1899. When Caro Bros. went to Oakland, they took the key to the storeroom with them. Upon the defendant writing a sharp letter demanding the key, or an arrest would follow, Isadore Caro returned to Roseburg and delivered the key to defendant. At this time a controversy arose as to some counters and shelving in the storeroom which Caro Bros. desired to remove to Oakland. Defendant then complained that Caro Bros. had failed to pay about $400 in interest and taxes during the time they had been in possession, after the execution of the deed. Isadore Caro adjusted this matter by allowing the counters and shelving to remain in the storeroom as the property of H. Wollen-

berg. He executed a receipt to that effect, in the name of Caro Bros., stating that "possession of said premises and also those premises occupied by Simon Caro as a residence is hereby surrendered to said H. Wollenberg." Defendant places great reliance upon this instrument in support of his title. It appears that the receipt was prepared by Honorable Frank W. Benson, a careful lawyer, who was afterward Secretary of State and Governor of Oregon. If it had been intended that the instrument should have any effect upon the title to the real property, it is difficult to understand why the same was not in the form of a deed.

Isadore Caro died July 16, 1900. He was unmarried. Two brothers, plaintiff, Simon Caro, and Morris Caro, and a sister, Mrs. Monheim, survived him. Since that time Morris Caro has died, leaving one daughter, Hazel. Mrs. Monheim has also died leaving two children, namely, Amelia Beckman, and Bell Joseph.

It will be noticed that the interest upon the indebtedness mentioned in the deed which Caro Bros. paid monthly for about four years after the deed was executed was $110.73. It appears from the evidence that, at the time Caro Bros. left for Oakland, the rents, not including the storeroom occupied by them, were $140 per month, and that the storeroom was worth $60 per month; that the rents have since increased to about $275 per month. According to the estimate of W. H. Fisher, a banker of Roseburg, the value of the premises at the time possession was surrendered was about $28,000. Plaintiff claims that the rents averaged $225 per month. Defendant claims, however, that no more than the amount of the indebtedness could have been obtained for the property. He also states that he made them a present of the $400, the amount which they were behind in interest and taxes; that they could

not pay; and that he took possession and informed the tenants. Mr. Wollenberg does not remember whether or not the writing or defeasance was executed at the same time as the deed, to wit, in 1895. He thinks it was. He further states that Caro Bros. gave the deed of the property providing that he would give them four years' time, and that he did so. Judge J. W. Hamilton, who was then a practicing attorney, testified that it appeared that he prepared the deed and was a witness thereto; that it was his impression that the deed was given as security; and that he informed Mr. Wollenberg that if Caro Bros. remained in possession, it would be necessary for him to foreclose.

1. "Once a mortgage, always a mortgage," is an ancient equity maxim of approved policy and wisdom, the effect of which is to protect borrowers from being forced by their necessities into unequal and cruel bargains: *Youle* v. *Richards,* 1 N. J. Eq. 534 (23 Am. Dec. 722) ; *Grover* v. *Hawthorne,* 62 Or. 95 (114 Pac. 472, 121 Pac. 808). Therefore, when Wollenberg entered into possession of the premises under his deed which was in equity a mortgage, he held possession as mortgagee. The relation of the parties was analogous to that of trustee and *cestui que trust: Green* v. *Turner,* 38 Iowa, 112, 118.

2. In order to determine whether or not a deed absolute upon its face is in effect a mortgage, the test is: Was there a debt created, or was there a pre-existing debt continued for which the instrument was designed as security? If the pre-existing debt was not extinguished, or if a new debt was intended to be created and the conveyance was given as security, then in equity it should be declared to be in effect a mortgage: *Bickel* v. *Wessinger,* 58 Or. 98 (113 Pac. 34) ; *Kinney* v. *Smith,* 58 Or. 158 (113 Pac. 854) ; *Miles* v. *Hemenway,* 59 Or. 318 (111 Pac. 696, 117 Pac. 273).

3. The statute of limitations is an affirmative defense to be alleged and proved. It is therefore incumbent upon a trustee to show that there was a direct repudiation of the trust, and that the *cestui que trust* had knowledge thereof. If the trustee repudiates the trust and asserts an adverse claim to the trust property, these facts being known to the *cestui que trust,* the statute then begins to run in the trustee's favor, except where the *cestui que trust* is not *sui juris,* or is under undue influence proceeding from the trustee, in which latter case the statute will begin to run only when such influence ceases: 25 Cyc., p. 1169.

4. Under our law, when a mortgagee obtains possession of the mortgaged premises after condition broken, either by consent of the mortgagor or otherwise, he has the right to retain such possession as against the mortgagor until the mortgage debt has been paid: *Lambert* v. *Howard,* 49 Or. 342, 345 (90 Pac. 150). Hence Caro could not recover possession of the real property from Wollenberg without his debt being first satisfied.

5. As long as the relation of mortgagor and mortgagee existed between Caro and Wollenberg, the statute did not commence to run in favor of either of them. That relation must be terminated in some way before either party in possession can interpose the statute as a defense against the other.

6. When, by the terms of the mortgage, or by subsequent agreement, the mortgagee is to take and hold possession of the property until he shall satisfy his claim from the rents and profits, his possession does not become adverse until his demand has been satisfied from this source, or he asserts an absolute title in himself, and gives distinct notice thereof to the mortgagor. This rule applies in case of a deed absolute upon its face, given as security for the payment of a debt, and

in effect a mortgage: *Green* v. *Turner,* 38 Iowa, 112; 2 Jones, Mortgages (6 ed.), § 1152.

7. When a mortgagee enters into possession of the mortgaged property under a void foreclosure, he is presumed to hold as mortgagee in possession, and limitation does not run in his favor or in favor of his grantees, against a suit for redemption and for an accounting by the mortgagor, which is a continuing right, unless there is an actual notice to the mortgagor that they claim to hold in some other right adverse to the mortgage: 2 Jones, Mortgages (6 ed.), § 1152; *Cooke* v. *Cooper,* 18 Or. 142 (22 Pac. 945, 17 Am. St. Rep. 709, 7 L. R. A. 273); *Frink* v. *Le Roy,* 49 Cal. 314; *Warder* v. *Enslen,* 73 Cal. 291 (14 Pac. 874); *McPherson* v. *Hayward,* 81 Me. 329 (17 Atl. 164). In 1 Cyc., p. 1071, it is stated that: "So long as the relation of mortgagor and mortgagee exists, the possession of the mortgagee is not adverse to the mortgagor, and the statute of limitations does not run in his favor. Possession in the mortgagee must, from its commencement, have been taken under the engagement, which equity always implies, to account as a bailiff of the rents and profits to the mortgagor and to apply them to the discharge of the mortgage debt." After a mortgagee has received payment of his debt, he really holds the property in trust for the mortgagor: 2 Jones, Mortgages, § 1159.

8. There is no legal restraint on a mortgagor's selling the mortgaged property to the mortgagee in satisfaction of his debt; but where the validity of such a sale is in issue, as in the case at bar, the burden of proof is upon Wollenberg, the mortgagee, to show that the sale of the mortgagor's equity was voluntarily made, that his conduct in making the purchase was in all things fair, and that he paid for the property what

it was reasonably worth: 1 Wiltsie, Mortgage Foreclosure (3 ed.), § 305.

9. The right to redeem is favored by a court of equity, and will not be allowed to be taken away except upon a strict compliance with the steps necessary to divest it: 2 Wiltsie, Mortgage Foreclosure, § 1033. It is stated that: ''The doctrine of common law, as approved and modified by the principles of the civil law, was that an equity of redemption could not be cut off except by a foreclosure, and that is the general rule in this country to-day, in the absence of any statute controlling. Thus, it has recently been held by the United States Circuit Court of Appeals, sitting in the eighth circuit that an election by the grantee in an absolute deed constituting a mortgage in equity, to avail himself of an option therein to retain the property in satisfaction of the loan, will not operate to bar the equity of redemption, but such equity can be barred only by a proper foreclosure'': 2 Wiltsie, Mortgage Foreclosure, § 1038. A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale according to law: Section 335, L. O. L. A lien upon real or personal property, other than that of a judgment or decree, whether it be created by mortgage or otherwise, shall be foreclosed, and the property be adjudged to be sold to satisfy the debt, and this remedy is exclusive, and all other methods must be disregarded: Section 422, L. O. L.; *Thompson* v. *Marshall,* 21 Or. 171, 178 (27 Pac. 957); *Hall* v. *O'Connell,* 52 Or. 164 (95 Pac. 717, 96 Pac. 1070).

10. The evidence shows that the defendant went into possession of the property in question under an agreement with plaintiff that he would collect the rents and apply the same upon the mortgage indebtedness.

Simon Caro testifies positively to this fact, and, while the defendant denies the same, he appears to base his denial upon his deed which he claims was absolute. His statement is rather a conclusion than a detail of what was said. Granting that plaintiff and defendant are both honest in their convictions as to the effect of the transaction, it appears that, while both were business men, the defendant had about 20 parcels of real property in the vicinity of that in controversy, and transacted a large amount of business. We think defendant is undoubtedly in error as to his claim that the deed was given in the first instance as an absolute deed and was not intended as a mortgage. The plaintiff was dealing in respect to nearly all his property and ought at least to remember what the agreement was. It would seem that plaintiff did the best he could under the circumstances, and that when he was in arrears to the amount of about $400, for interest and taxes, which he had agreed to pay, he consented that Wollenberg should take possession and collect the rents, as he was going away. It hardly appears reasonable that plaintiff would have given up all claim to the property in 1899, which was then paying about $200 in rents, a sum sufficient to pay the taxes and a fair rate of interest upon a valuation much larger than the amount of his indebtedness. The retention of the key to the store by Caro Bros., after moving to Oakland, a circumstance which terminated the friendly relation between the parties, indicates that the mortgagor did not surrender any more of his rights than he was compelled to. After he took possession of the real property, defendant seems to have relied upon what he erroneously believed to be his legal rights under the deed. He failed to give plaintiff any notice whatsoever that he claimed or intended to claim anything more than the amount of his mortgage. De-

fendant undertook to prove a presumptive title as a defense. This burden he has failed to maintain.

11. As we understand the record, the heirs of Isadore Caro, deceased, succeeded to his interest in the property, and, in order for a complete settlement of the controversy, they should be made parties to this suit. It follows that the decree of the lower court must be reversed and the cause remanded, with directions to enter a decree declaring the deed to be in effect a mortgage; to ascertain by an accounting the amount, if any, due defendant upon the mortgage indebtedness; and for such further proceedings as may seem necessary, not inconsistent herewith.     REVERSED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE McNARY concur.